UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

UNITED STATES OF AMERICA      )
                              )
              v.              )        1:11-cr-00003-JAW
                              )
ROBERT GOGUEN                 )

**ORDER ON MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S REQUEST TO APPLY THE PENALTY RANGES UNDER 18 U.S.C. § 3583(k)**

On July 14, 2011, a convicted sex offender pleaded guilty to failing to register in the state of Maine in violation of 18 U.S.C. § 2250.  The term of supervised release for a violation of § 2250 is "any term of years not less than 5, or life."  18 U.S.C. § 3583(k).  In addition, a defendant convicted of violating § 2250 may be subject to a special penalty of "not less than 5 years" of imprisonment if he commits one of a number of sex-related crimes while on supervised release.  *Id.*  For this provision to apply, while on supervised release, the defendant must meet a number of conditions: (1) he must be required to register under the Sex Offender Registration and Notification Act (SORNA), (2) he must commit another sex-related crime, and (3) the potential term of imprisonment for the new crime must be longer than one year.  *Id.* If all these conditions are met, the statute requires the court to revoke the defendant's supervised release and to impose a sentence of at least five years' imprisonment on the supervised release violation.  *Id.*  The potential term of incarceration is life.  *Id.*

When this Defendant pleaded guilty to violating 18 U.S.C. § 2250, the Court, for reasons that are obscure, did not inform him of the correct term of supervised

release or about the special penalty provision for a violation of supervised release. Instead, the Court misinformed the Defendant that he faced a maximum term of supervised release of three years under 18 U.S.C. § 3583(b)(2) and that the maximum term of imprisonment for a violation of a term of supervised release was two years pursuant to 18 U.S.C. § 3583(e)(3). When the Court sentenced the Defendant, it improperly imposed a three-year term of supervised release under § 3583(b)(2).[1]

Unfortunately, having served his term of incarceration and while on supervised release, the Probation Office filed a petition for revocation of supervised release alleging that the Defendant committed what amounts to new criminal conduct that would trigger the five-year mandatory and up to life term of incarceration under § 3583(k). On November 13, 2015, the Probation Office filed a petition for revocation on the ground that the Defendant possessed child pornography on his laptop computer.

The Government asserts that § 3583(k) requires the Court to revoke the Defendant's term of supervised release and sentence him to at least five years in prison even though the Court incorrectly advised the Defendant that he faced a

---

[1]     Although it makes no difference for purposes of the resolution of this issue why the Court erred, the error remains inexplicable. The error began with the Synopsis the Government filed on January 13, 2011. *Synopsis* (ECF No. 2) (stating that the maximum term of supervised release was three years under 18 U.S.C. § 3583(b)(2) and that the maximum term of imprisonment for violation of supervised release was not more than two years under § 3583(e)(3)). Although it is true that the Defendant would have little incentive to raise the possibility that his period of supervised release should be more severe, defense counsel did not notify the Court of the error. The Probation Office adopted a portion of the erroneous synopsis in the Revised Presentence Investigation Report. *PSR* ¶ 59 ("If a term of imprisonment is imposed, the Court may impose a term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583(b)(2)"). The Court is baffled that the error was not caught during the entire process from indictment through the guilty plea, continuing with the presentence proceedings through sentencing to judgment.

maximum of two years of imprisonment under §§ 3583(b)(2) and 3583(e)(3). The Defendant opposes the application of § 3583(k)'s penalty provision based on the erroneous information at the Rule 11 hearing.

Given the unique circumstances of this case, the Court will limit the potential term of imprisonment for violation of supervised release to a maximum of two years consistent with what the Court told the Defendant at the Rule 11 hearing.

## I.   BACKGROUND

### A.   Initial Violation of 18 U.S.C. § 2250

On July 14, 2011, Robert Goguen pleaded guilty in the District of Maine to one count of failing to register as a sex offender in violation of 18 U.S.C. § 2250. *Def.'s Mem. in Opp'n to Gov't's Req. to Apply the Penalty Ranges under 18 U.S.C. § 3583(k)* at 2 (ECF No. 163) (*Def.'s Mem.*). Mr. Goguen's obligation to register as a sex offender stemmed from a 1996 Connecticut conviction of Sexual Assault in the Second Degree under Connecticut General Statute § 53a-71(a)(3). *Def.'s Mem.* Attach 1, *Order on Def.'s Mot. to Dismiss* at 1 (ECF No. 163). Mr. Goguen was released from custody for the 1996 conviction on April 1, 2000. *Prosecution Version* at 1 (ECF No. 42) (*Pros. Version*).

On August 31, 2009, Mr. Goguen applied for and obtained a driver's license from the Maine Bureau of Motor Vehicles. *Pros. Version* at 2–3. On July 29, 2010, Mr. Goguen met with police officers and informed them that he had lived in Maine for the previous 16 months. *Pros. Version* at 3. Mr. Goguen failed to register as a sex offender in Maine during that time. *Id.* Accordingly, on January 12, 2011, a grand

jury issued an indictment charging Mr. Goguen with one count of failing to register in violation of § 2250. *Indictment* (ECF No. 1).

Mr. Goguen pleaded guilty on July 14, 2011. *Minute Entry* (ECF No. 43). At the time of the plea, the Government's Synopsis indicated that, in addition to imprisonment and a fine, Mr. Goguen faced a term of supervised release of not more than three years under 18 U.S.C. § 3583(b)(2). *Synopsis* at 1 (ECF No. 2). The Synopsis also indicated that if Mr. Goguen violated his supervised release, he could be imprisoned for not more than two years pursuant to 18 U.S.C. § 3583(e)(3). *Id.* At Mr. Goguen's Rule 11 hearing, consistent with the Synopsis, the Court informed Mr. Goguen:

> Now, by pleading guilty to this crime, you're subject to the following maximum ranges of penalties. You're subject to being placed in jail for a period not to exceed ten years. You're subject to a fine not to exceed $250,000, and it can be both prison and a fine. Following any term of imprisonment, you're subject to a period of supervised release not to exceed three years. If you were to violate a term of supervised release, you could go back to jail for a period not to exceed two years. And, finally, you're subject to a special assessment of $100.00.

*Tr. of Proceedings* at 8:16–9:2 (ECF No. 11). Mr. Goguen stated that he understood the maximum penalties and still wished to plead guilty. *Id.* at 9:3, 16:13–16. There was no plea agreement between the Government and Mr. Goguen. *Id.* 14:4–6.

Following the Rule 11 hearing, the Probation Office filed a Revised Presentence Investigation Report (PSR) that also indicated that Mr. Goguen faced a term of supervised release not to exceed three years under § 3583(b)(2). *Def.'s Mem.* at 2; *Gov't's Resp. to Def.'s Mem. in Opp'n to Gov't's Req. to Apply the Penalty Ranges under 18 U.S.C. § 3583(k)* at 1–2 (ECF No. 164) (*Gov't's Resp.*). Neither party objected

to this part of the PSR. On January 31, 2013, the Court sentenced Mr. Goguen to 37 months of imprisonment, three years of supervised release, and a $100.00 special assessment. *Am. J.* (ECF No. 90).

### B.    Mr. Goguen's Supervised Release

Mr. Goguen's term of supervised release commenced on May 11, 2013. *Pet. for Warrant or Summons for Offender under Supervision* at 1 (ECF No. 96). On September 23, 2013, Mr. Goguen admitted violating the term of his supervised release that required him to participate in sex offender treatment. *Id.* at 1–2; *Minute Entry* (ECF No. 112). The Court sentenced Mr. Goguen to five months of imprisonment and 31 months of supervised release. *Minute Entry* (ECF No. 112).

Mr. Goguen's supervised release recommenced on January 15, 2014. *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 114). On November 13, 2015, the Probation Office moved the Court to issue a warrant for Mr. Goguen's arrest, alleging that on November 10, 2015, Mr. Goguen possessed a laptop computer containing child pornography in violation of his supervised release and 18 U.S.C. § 2252A(a)(5). *Id.* at 1–2. In the motion, the Probation Office indicated that Mr. Goguen faced a term of imprisonment of up to two years for his supervised release violation pursuant to § 3583(e)(3). *Id.* at 4. The Court authorized the issuance of the arrest warrant, and Mr. Goguen was arrested on November 13, 2015. *Minute Entry* (ECF No. 148).

### C.    The Dispute

Following his arrest, the Government realized that the Court imposed an incorrect term of supervised release when it initially sentenced Mr. Goguen for failing to register as a sex offender. The Government pointed out that because Mr. Goguen violated § 2250, the Court should have imposed a term of supervised release between five years and life under 18 U.S.C. § 3583(k), rather than no more than three years under § 3583(b)(2). The distinction carries notable implications. If a defendant violates a term of release imposed under § 3583(b)(2), the maximum term of imprisonment is two years pursuant to § 3583(e)(3). However, if a defendant violates a term of release imposed under § 3583(k) having violated the special conditions set forth in that section, the Court must impose a five-year term of incarceration.

The Government argued that because the Court should have imposed a term of supervised release under § 3583(k), the Court should now impose the penalty associated with § 3583(k), namely, at least five years' imprisonment. On January 21, 2016, Mr. Goguen filed a memorandum in opposition to the Government's request to apply the penalty ranges under § 3583(k). *Def.'s Mem.* In the memorandum, Mr. Goguen raises a number of interrelated issues. First, Mr. Goguen argues that he was not required to register under SORNA at the time he violated the term of supervise release, so the penalty provision of § 3583(k) does not apply. Next, he argues that imposing a term of supervised release under § 3583(k) is optional and that the Court properly used its discretion to impose a term of supervised release under § 3583(b)(2) rather than § 3583(k). Accordingly, he contends the corresponding penalty provisions of § 3583(e)(3) apply, limiting the term of imprisonment to a maximum of two years

6

for violation of his supervised release. Finally, he argues that because the Court informed Mr. Goguen that he only faced a maximum term of imprisonment of two years for a supervised release violation, fairness prohibits the Court from now sentencing Mr. Goguen to a minimum of five years under § 3583(k).

## II.   DISCUSSION

The Court will first discuss Mr. Goguen's arguments that he was not required to register under SORNA at the time of his alleged violation of supervised release. Next, the Court will analyze whether the terms of § 3583(k) are mandatory when they apply to a defendant, or whether the Court can choose to impose a term of supervised release under § 3583(b) instead. The Court will then discuss whether it can impose a term of imprisonment between five years and life for a supervised release violation under § 3583(k) even though the Court informed the defendant at the Rule 11 hearing that he would only face a maximum of two years pursuant to §§ 3583(b)(2) and 3583(e)(3).

### A.   SORNA Registration Requirement

Mr. Goguen contends that the penalty provisions of § 3583(k) do not apply because he was not required to register under SORNA at the time of the alleged violation of supervised release in 2015. *Def.'s Mem.* at 10. Mr. Goguen alleges that he was not required to register because (1) the Maine Superior Court ruled that his obligation to register as a sex offender ended in 2010, *id.*, and (2) he is not a Tier III offender under SORNA, and thus his obligation to register ended in 2010 before his alleged supervised release violation. *Def.'s Reply* at 11–14. The Court rejects both

arguments and concludes that Mr. Goguen was required to register under SORNA at the time of the alleged violation.

### 1.    The Maine Superior Court Decision

Mr. Goguen points out that the Maine Superior Court recently held that his obligation to register as a sex offender ended on April 1, 2010. *Def.'s Mem.* at 10 (citing *State v. Goguen*, No. CR-14-2979, *Order on Def.'s Mot. to Dismiss* (Me. Super. Ct. Dec. 10, 2015)) (*State Goguen Order*).   Because the alleged violation of his supervised release occurred on November 10, 2015—over five years after his obligation to register ended—Mr. Goguen argues that the penalty provisions of § 3583(k) are inapplicable. *Id.*

The Government asserts that Mr. Goguen's reliance on the Maine Superior Court decision is misplaced. *Gov't's Resp.* at 8.  First, the Government argues that Mr. Goguen's federal obligation to register as a sex offender under SORNA is independent of any state obligations. *Id.* at 8–10.  Additionally, the Government emphasizes that the Superior Court reached its decision by determining that the statute requiring Mr. Goguen to register as a sex offender for life violated the Ex Post Facto Clauses of the Maine and United States Constitutions. *Id.* at 8, 10.  However, the Government explains, federal caselaw "has consistently rejected the position" that SORNA's registration requirements violate the Ex Post Facto Clause of the United States Constitution. *Id.* at 10–11 (collecting cases).  Accordingly, the Government urges the Court to find that Mr. Goguen was required to register as a sex offender and that the penalty provisions of § 3583(k) do apply.

In reply, Mr. Goguen highlights that the Superior Court decision relied on *State v. Letalien*, 2009 ME 130, 985 A.2d 4, a Maine Supreme Judicial Court ruling that cited federal precedent to determine that the retroactive application of Maine's sex offender and registration and notification law violated the Ex Post Facto Clause of the United States Constitution. *Def.'s Reply* at 15. As such, Mr. Goguen submits that the Superior Court decision "applies with equal force" to this Court's analysis. *Id.* at 14.

The Superior Court's December 10, 2015 opinion in *State v. Goguen* addressed Mr. Goguen's motion to dismiss a criminal complaint pending against him in the Maine Superior Court for failing to register under 34-A M.R.S. § 11202, the Maine Sex Offender Registration and Notification Act (MSORNA). *State Goguen Order* at 2. The Court noted that on September 6, 1996, Mr. Goguen had been convicted in the state of Connecticut of Sexual Assault in the Second Degree, a violation of Connecticut General Statute § 53a-71(a)(3). *Id.* at 1. As of the date of his conviction, Mr. Goguen was required to register as a sex offender for ten years after the date of his release from prison. *Id.* However, while he was in prison, the state of Connecticut enacted a law that required people who were released into the community on or after October 1, 1998, and who had been convicted of a sexually violent crime, including Sexual Assault in the Second Degree, to register as a sex offender for life. *Id.* Mr. Goguen was released into the community on April 1, 2000. *Id.*

Mr. Goguen moved to the state of Maine in 2000. *Id.* at 2. MSORNA distinguishes between ten-year and lifetime registrants. 34-A M.R.S. § 11203(5), (8).

9

Among other things, a lifetime registrant is a person who has been convicted of a "sexually violent offense." 34-A M.R.S. § 11203(8)(A). MSORNA defines "sexually violent offense" by listing those crimes that qualify under Maine criminal law and by including a conviction in another jurisdiction "that includes the essential elements of an offense" so listed. 34-A M.R.S. § 11203(7)(A), (B). Consistent with this provision, the Superior Court Justice compared the elements of Sexual Assault in the Second Degree in Connecticut with the elements of Gross Sexual Assault in Maine and concluded that the Connecticut crime "appears to satisfy all of the essential elements of Maine's Gross Sexual Assault." *State Goguen Opinion* at 7 (citing 17-A M.R.S. § 253(2)(D)). Thus, the Superior Court concluded that Mr. Goguen would be required to register under MSORNA, if MSORNA could constitutionally be applied to him. *Id.* at 2, 7.

The Superior Court then analyzed the caselaw emanating from the Maine Supreme Judicial Court, specifically *State v. Latelien*; *Doe I v. Williams*, 2013 ME 24, 61 A.3d 718; and *Doe XLVI v. Anderson*, 2015 ME 3, 108 A.3d 378. Applying this caselaw, the Superior Court Justice concluded that "because Defendant's obligation to register in Maine stems from his obligation to register in Connecticut, and that obligation was effectively part of his sentencing in Connecticut, the application of [MSORNA] in these circumstances is so punitive in its effect that it violates the Ex Post Facto Clauses of the Maine and U.S. Constitutions." *Id.* at 7–8. The Superior Court granted Mr. Goguen's motion to dismiss the criminal complaint. *Id.* at 8.

Despite the Superior Court's conclusion, this Court concludes that SORNA requires Mr. Goguen to register as a sex offender for life, and thus the penalty provisions of § 3583(k) are applicable.  Congress enacted SORNA in July 2006 to create "a comprehensive national system for the registration of [sex] offenders."  42 U.S.C. § 16901.  SORNA requires sex offenders to "register, and keep the registration current, in each jurisdiction where the offender resides…" 42 U.S.C. § 16913(a).  SORNA's registration requirements apply regardless of whether an offender's predicate sexual offense occurred before or after SORNA came into effect in July 2006.  *See United States v. Parks*, 698 F.3d 1 (1st Cir. 2012).

Mr. Goguen's invocation of state authority is unavailing for several reasons.  First, the Superior Court decision dealt with Mr. Goguen's registration obligations under Maine's sex offender and registration law.  Yet Mr. Goguen's federal registration obligations are independent of his duties to register under Maine law.  *See United States v. Thompson*, 431 F. Appx. 2 (1st Cir. 2011).  In *Thompson*, the defendant was convicted of failing to register as a sex offender in Maine under SORNA.  *Id.* at 3.  The defendant argued that he could not have registered federally under SORNA because Maine had not yet enacted statutes or promulgated regulations implementing SORNA.  *Id.*  However, the First Circuit upheld the defendant's conviction because, under SORNA, "the [federal] registration requirements for sex offenders are neither conditioned on nor harnessed to state implementation of SORNA's state-directed mandates."  *Id.*

*Thompson* makes clear that an offender's obligation to register under the federal SORNA statute is separate from the offender's duty to register under state law.  Thus, even though Mr. Goguen was not required to register under Maine's sex offender registry law, he still needed to register federally under SORNA.  *See also United States v. Billiot*, 785 F.3d 1266, 1269 (8th Cir. 2015) ("Although SORNA requires states to maintain a jurisdiction-wide sex offender registry, SORNA imposes an independent *federal* obligation for sex offenders to register that does not depend on, or incorporate, a state-law registration requirement") (emphasis in original) (internal quotation marks omitted).

Additionally, the Maine state courts' ex post facto rulings are not binding on this Court.  "Federal jurisprudence, not state jurisprudence, governs the resolution of ex post facto challenges in federal criminal cases."  *Thompson*, 431 F. Appx. at 4 (citing *United States v. Rodriguez*, 630 F.3d 39, 41–21 (1st Cir. 2010)).  Federal jurisprudence, including binding First Circuit precedent, is clear that SORNA does not violate the Ex Post Facto Clause of the United States Constitution.  *See Parks*, 698 F.3d at 6 (1st Cir. 2012) (joining "every circuit to consider the issue" in rejecting an ex post facto challenge to SORNA).  In fact, the First Circuit specifically rejected a defendant's reference to *State v. Letalien* to argue that SORNA violated the Ex Post Facto Clause:

> In an effort to blunt the force of this reasoning, the defendant repeatedly invokes the decision of the Supreme Judicial Court of Maine in [*Letalien*]…*Letalien* is of no consequence here.  Federal jurisprudence, not state jurisprudence, governs the resolution of ex post facto challenges in federal criminal cases.

*Thompson*, 431 F. Appx. at 4.

Because binding First Circuit precedent contradicts the Maine state courts' non-binding ex post facto holdings, and because the state courts' rulings do not affect Mr. Goguen's federal registration obligations under SORNA anyway, the Court concludes that Mr. Goguen is required to register under the federal SORNA statute, and the penalty provisions of § 3583(k) apply.

### 2.    Mr. Goguen's SORNA Tier Classification

SORNA classifies offenders into three tiers with each category corresponding to specific types of offenses.  42 U.S.C. § 16911.  A Tier III sex offender means a defendant whose offense was punishable by more than one year of imprisonment and whose offense is "comparable to or more severe than" a number of listed sex offenses, including sexual abuse as described in 18 U.S.C. § 2242.  42 U.S.C. § 16911(4)(A)(i). Section 2242 criminalizes a person's engaging in a sexual act with another person if that person is either "incapable of appraising the nature of the conduct" or "physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act[.]"  18 U.S.C. § 2242(2)(A)–(B).  Tier II has a rather complicated definition, but in general it captures defendants who committed a sexual offense punishable by more than one year in prison, whose offense is "comparable to or more severe than" certain listed offenses, and whose conviction involved the misuse of a minor in specific ways or occurred after the defendant became a Tier I offender.  42 U.S.C. § 16911(3)(A)–(C).  Tier I includes those offenders who are neither Tier II nor Tier III offenders.  42 U.S.C. § 16911(2).  A Tier III offender must register as a sex

offender for the rest of his life; a Tier II offender for 25 years, and a Tier I for 15 years.[2]  42 U.S.C. § 16915(a)(1)–(3).

Mr. Goguen argues that he was not required to register under SORNA at the time of his alleged violation of supervised release because his predicate sexual offense did not qualify him as a Tier III offender.  *Def.'s Reply* at 11–14.  If Mr. Goguen were a Tier I offender, his obligation to register would have ended on April 1, 2015, seven months before the alleged violation of supervised release on November 10, 2015.[3]  The Government, on the other hand, believes that Mr. Goguen's predicate sexual offense qualifies Mr. Goguen as a Tier III offender; therefore, he must register under SORNA for life.[4]  *Gov't's Resp.* at 3.

---

[2]      SORNA allows a Tier I and Tier III defendant to reduce the term of registration if he maintains a "clean record."  42 U.S.C. § 16915(b).  Mr. Goguen makes no argument that he would be entitled to a clean record reduction, and it appears from his subsequent conduct that he would not be eligible.

[3]      The Court sentenced Mr. Goguen to five months of imprisonment for an earlier violation of supervised release in 2013.  The text of SORNA requires the Court to toll Mr. Goguen's registration period while he is in custody.  *See* 42 U.S.C. § 16915(a) ("excluding any time the sex offender is in custody").  Even if the Court does not credit these five months toward Mr. Goguen's registration period, his registration period as a Tier I offender would still end before the alleged violation of supervised release on November 10, 2015.

[4]      Neither party mentioned it, but the PSR classified Mr. Goguen as a Title II offender.  *PSR* ¶ 12.  This classification had significant sentencing consequences for Mr. Goguen.  His base offense level was deemed to be 14.  *Id.*  If he had been a Tier III offender, his base offense level would have been 16.  U.S.S.G. § 2A3.5(a)(1).  If he had been a Tier I offender, it would have been 12.  *Id.* § 2A3.5(a)(3).  Applying other guideline factors and using the base offense level of 14, Mr. Goguen's total offense level was 19.  *PSR* ¶ 21.  Applying the same calculations, as a Tier III and Tier I offender, his total offense level would have been 21 and 17, respectively.  His criminal history category was III.  *Id.* ¶ 31.  Again using the base offense level of 14, Mr. Goguen's guideline range was 37 to 46, and he was sentenced to 37 months, the low end.  *Statement of Reasons*, Attach. 1, *Findings Affecting Sentencing* at 2 (ECF No. 81).  If he had been Tier III, he would have faced a guideline sentence range of 46 to 57 months and if Tier I, 33 to 41 months.

At the time of his original sentencing, neither the Government nor Mr. Goguen objected to the Tier II classification that drove the guideline range.  The Court has qualms about whether, if Mr. Goguen had not raised the question of his proper Tier classification, the Court could revisit an issue that could have (and perhaps should have) been objected to during the original sentencing process and that became the starting point for the Court's original sentencing analysis.

As a practical matter, if the Court were to hold Mr. Goguen and the Government to the Tier II classification in the original PSR, he would be required to register under SORNA for 25 years, 42 U.S.C. § 16915(a)(2), and therefore he would have committed the November 10, 2015 violation of his

"To determine a defendant's tier classification, courts compare the defendant's prior sex offense conviction with the offenses listed in SORNA's tier definitions." *United States v. Berry*, 814 F.3d 192, 195 (4th Cir. 2016).  Of the listed offenses in Tier III, only sexual abuse as described in 18 U.S.C. § 2242 is relevant to Mr. Goguen. Therefore, the Court must determine whether Mr. Goguen's prior state offense under C.G.S. § 53a-71(a)(3) is "comparable to or more severe than" sexual assault as described in 18 U.S.C. § 2242.

In *US v. Morales*, 801 F.3d 1 (1st Cir. 2015), the First Circuit identified the proper analytical path.  To determine whether a state offense is "comparable to or more severe than" a federal offense listed in SORNA, the First Circuit instructs courts to employ the "categorical approach" established in *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, 133 S. Ct. 2276 (2013).  *Morales*, 801 F.3d at 4–6.  Under this approach, a court compares the statutory elements of the prior state offense with the elements of the specified federal statute.  *Id.* at 5.  The prior state conviction is "comparable to or more severe than" the federal offense if it is "defined more narrowly than, or has the same elements as" the federal statute. *United States v. Cabrera-Gutierrez*, 756 F.3d 1125, 1133 (9th Cir.) (citing *Descamps*, 113 S. Ct. at 2283).  By contrast, if the elements of the state offense "sweep[] more broadly" than those of the federal statute, the two statutes are not comparable, and

---

term of supervised release well within the 25-year registration period.  At the same time, Mr. Goguen raised the issue of his proper classification and, whatever else might be in dispute, it seems incontrovertible that the Tier II classification in the original PSR was in error.  In this opinion, the Court does not reach whether its conclusion that Mr. Goguen is a Tier III offender is binding on the parties for the purposes of future proceedings.

the prior state offense cannot serve as a predicate.  *Id.* (quoting *Descamps*, 113 S. Ct. at 2283).

The Connecticut sexual assault statute provides:

(a) A person is guilty of sexual assault in the second degree when such a person engages in sexual intercourse with another person and:…(3) such other person is physically helpless.

C.G.S. § 53a-71(a).  A person is "physically helpless" if:

[the] person is (A) unconscious, or (B) for any other reason, is physically unable to resist an act of sexual intercourse or sexual contact or to communicate unwillingness to an act of sexual intercourse or sexual contact.

C.G.S. § 53a-65.

The federal sexual assault statute listed in Tier III states:

Whoever…knowingly—
(2) engages in a sexual act with another person if that other person is—
(A) incapable of appraising the nature of the conduct; or
(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;
or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

18 U.S.C. § 2242.

The Government argues that the elements of the two statutes parallel one another.  *Gov't's Resp.* at 6.  Accordingly, the Government contends that Mr. Goguen's predicate offense of Sexual Assault in the Second Degree is "comparable to or more severe than" sexual abuse as defined in 18 U.S.C. § 2242.  *Id.*

Mr. Goguen disagrees.  He argues that the elements of the Connecticut sexual assault statute sweep more broadly than the elements of the federal sexual abuse statute because the Connecticut statute has no *mens rea* requirement whereas the

16

federal statute contains a *mens rea* requirement of "knowingly." *Def.'s Reply* at 13–14. He cites Connecticut state court decisions holding that Sexual Assault in the Second Degree is a "general intent" offense to prove that "for the Connecticut offense[,] the act itself is all that matters and no mental state is required." *Id.* (collecting cases). According to Mr. Goguen, because Connecticut's statute is a general intent offense with no *mens rea* requirement, it penalizes more behavior than the federal offense, which requires a specific *mens rea* of "knowingly." *Id.* Thus, under the categorical approach, the Connecticut offense should not serve as a predicate offense, and the Court should classify Mr. Goguen as a Tier I offender. *Id.* at 11–12.

Mr. Goguen's argument is unpersuasive. In fact, Connecticut caselaw interpreting C.G.S. § 53a-71(a) directly contradicts his position. Mr. Goguen is correct that Connecticut courts have described Sexual Assault in the Second Degree as a "general intent" offense. However, this does not mean, as Mr. Goguen suggests, that the offense has no *mens rea* requirement. Indeed, the Connecticut Supreme Court has held that to prove Sexual Assault in the Second Degree, the government must show that the defendant "*knowingly* engaged in sexual intercourse[.]" *State v. Sorabella*, 277 Conn. 155, 169, 891 A.2d 897 (2006) (emphasis added).

Although *Sorabella* concerned a different subsection of Connecticut's Sexual Assault in the Second Degree statute, its reasoning applies with equal force to the present case. In *Sorabella*, a jury found the defendant guilty of, among other things,

17

two counts of attempted Sexual Assault in the Second Degree, in violation of C.G.S.

§ 53a-71(a)(1). *Id.* at 160. Section 53a-71(a)(1) states:

> (a) A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than three years older than such other person[.]

C.G.S. § 53a-71(a)(1). The defendant argued that C.G.S. § 53a-71 is a strict liability

crime—that is, a crime for which no intent is necessary. *Sorabella*, 277 Conn. at 168.

Accordingly, the defendant contended that attempted sexual assault was not a

cognizable offense because it is impossible to attempt a strict liability offense. *Id.*

The Connecticut Supreme Court disagreed. The Court reasoned that C.G.S. §

53a-71 is a general intent offense, meaning that the crime only requires the actor to

possess "a general intent to perform the acts that constitute the elements of the

offense." *Id.* at 169. In the context of C.G.S. § 53a-71(a)(1), this meant that the state

was not required to establish that the defendant knew that the person with whom he

had sexual intercourse was under the age of sixteen. *Id.* Rather, the state only

needed to prove "that the accused knowingly engaged in sexual intercourse with a

person who, in fact, had not attained the age of sixteen." *Id.* That is, the state needed

to establish "that the accused had the general intent to have sexual intercourse with

the victim." *Id.* at 170.

*Sorabella* makes clear that when the Connecticut courts refer to C.G.S. § 53a-

71(a) as a "general intent" offense, they do not mean that "the act itself is all that

matters and [that] no mental state is required." *See Def.'s Reply* at 14. On the

contrary, the state must prove that the defendant "knowingly engaged" in sexual

intercourse.  *Sorabella*, 277 Conn. at 169.  It is simply that the state does not need to establish that the defendant was aware of the further attendant circumstances related to the sexual intercourse.

The same logic applies to the present case.  Here, Mr. Goguen was convicted of violating C.G.S. § 53a-71(a)(3).  An individual violates C.G.S. § 53a-71(a)(3) when "such person engages in sexual intercourse with another person and:…(3) such other person is physically helpless."  Applying *Sorabella*, the Connecticut prosecutors did not need to prove that Mr. Goguen knew that the victim was physically helpless.  The prosecutors simply needed to prove that Mr. Goguen knowingly had sexual intercourse with another person who, in fact, was physically helpless.

With this understanding, the Court inspects the elements of each statute in accordance with the categorical approach.  A person violates the Connecticut Sexual Assault in the Second Degree statute if the person (1) knowingly engages in (2) sexual intercourse with another person who is, in fact, (3) physically helpless, meaning that the person was either unconscious or, for any other reason, physically unable to resist the act of sexual intercourse or to communicate unwillingness to an act of sexual intercourse.  C.G.S. § 53a-71(a)(3); C.G.S. § 53a-65.  A person is guilty of the federal offense of sexual abuse when the person (1) knowingly engages in (2) a sexual act with another person who is (3) incapable of declining participation in, or communicating unwillingness to engage in, the sexual act.  18 U.S.C. § 2242.

The elements of each statute, although not precisely identical, are strikingly similar.  Only element (2) contains a difference of potential significance.  The

Connecticut statute prohibits "sexual intercourse" while the federal statute describes a "sexual act." At first blush, "sexual intercourse" appears to incorporate a narrower band of conduct than a "sexual act." A closer inspection of the relevant definitions reveals that a "sexual act" and "sexual intercourse" include roughly the same conduct. Connecticut defines "sexual intercourse" as:

> vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. Its meaning is limited to persons not married to each other. Penetration, however slight, is sufficient to complete vaginal intercourse, anal intercourse or fellatio and does not require emission of semen. Penetration may be committed by an object manipulated by the actor into the genital or anal opening of the victim's body.

C.G.S. § 53a-65(2). Connecticut caselaw clarifies that digital penetration constitutes sexual intercourse by "an object manipulated by an actor" within the statutory definition of sexual intercourse. *See State v. Grant*, 33 Conn. App. 133, 139 n.8, 634 A.2d 1181 (1993). Federal law defines a "sexual act" for purposes of 18 U.S.C. § 2242 as:

> (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight;
> (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; [or]
> (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person[.]

18 U.S.C. § 2246(2).

The only notable difference between the definitions is that using an object or finger to penetrate an anal or genital opening only constitutes a "sexual act" under

the federal definition if there was "an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." Connecticut's definition of "sexual intercourse" requires no such intent. However, this distinction does not necessarily mean that the statutes are not "comparable" for purposes of SORNA's tier classification. "SORNA's tier regime only demands that the statutes be "comparable," not that they be identical." *United States v. Forster*, 549 F. App'x 757, 769 (10th Cir. 2013); *see also Morales*, 801 F.3d at 7–8 ("'comparable to'…provide[s] us some flexibility in examining the offenses").

Most importantly, the distinction does not appear to be essential to SORNA's tier framework. *See Morales*, 801 F.3d at 7–8 (holding that the explicit reference to an age cut-off in the text of SORNA was "so essential to the [tier] framework that the congressional cut-off must be strictly construed"). Here, the additional intent requirement in the federal statute only applies to a single sub-component of the definition of one element in an offense listed in Tier III. There are no explicit references to the additional intent requirement in SORNA's description of Tier III, nor does the additional intent requirement apply to other conduct that comprises a "sexual act." Accordingly, the Court concludes that this distinction is not so essential that it precludes Mr. Goguen from qualifying as a Tier III offender under SORNA.[5]

To summarize, in applying the categorical approach, the Court concludes that Connecticut's Sexual Assault in the Second Degree statute is "comparable to" the

---

[5]     This Court's conclusion is consistent with the Maine Superior Court Justice's conclusion that the Connecticut crime of Sexual Assault in the Second Degree "appears to satisfy all of the *essential elements* of Maine's Gross Sexual Assault" statute. *State Goguen Order* at 7 (citing 17-A M.R.S. § 253(2)(D)) (emphasis added).

federal sexual abuse statute listed in Tier III of SORNA.[6]   Therefore, Mr. Goguen is

a Tier III offender and must register as an offender for life.   Consequently, at the time

of his alleged violation of supervised release, Mr. Goguen was required to register

under SORNA, and thus § 3583(k) is applicable.

### B.    Mandatory Application of § 3583(k)

Mr. Goguen argues that even if § 3583(k) could apply to him, § 3583(k) is not

mandatory.  *Def.'s Mem.* at 3–5.  Mr. Goguen's logic proceeds as follows: § 3583(k)

merely mentions an "authorized term of supervised release."   He views the plain

language of the statute as indicating that it is not mandatory.   Hence, he asserts, the

Court lawfully used its discretion to impose a three-year term of supervised release

under § 3583(b)(2).   Because the Court imposed a term of supervised release under §

3583(b), Mr. Goguen faces a maximum period of incarceration of two years for his

violation of supervised release pursuant to § 3583(e)(3), rather than a five-year

minimum pursuant to § 3583(k).  *Id.*

The Government responds that § 3583(k) is mandatory, citing *United States v.*

*Brown*, 586 F.3d 1342 (11th Cir. 2009).  *Gov't's Resp.* at 11–12.  Moreover, because

---

[6]      The Court has rested its decision on a comparison of the elements of the state and federal
statutes in accordance with *Morales*.  If the Court engaged in the modified categorical approach and
examined documents in accordance with *Shepard v. United States*, 544 U.S. 13 (2005), to the extent
the Court could consider the unobjected-to contents of the PSR, it is noteworthy that the First Circuit
has affirmed the application of 18 U.S.C. § 2242(2)(C) in circumstances similar to Mr. Goguen's 1996
Connecticut conviction for Sexual Assault in the Second Degree.  *See* PSR ¶ 26 (intoxicated sixteen-
year-old female passed out and woke up to discover the Defendant sexually assaulting her).  In *United
States v. Jahagirdar*, 466 F.3d 149 (1st Cir. 2006), a female passenger in a flight from Dallas to Boston
awoke from a nap to find the defendant's hand inside her underpants.  *Id.* at 150.  *See United States
v. Schoenborn*, 793 F.3d 964 (8th Cir. 2015) (victim passed out from drinking too much alcohol and
defendant engaged in sexual intercourse with her); *United States v. Papakee*, 573 F.3d 569 (8th Cir.
2009) (while victim was intoxicated, defendant sexually abused her); *United States v. Armstrong*, 166
F. Appx. 949 (9th Cir. 2006) (victim passed out and awoke to an act of anal penetration).

Mr. Goguen was required to register under SORNA and because he committed a criminal offense under chapter 110 for which imprisonment for a term longer than one year could be imposed, the Government argues that § 3583(k) mandates a specific penalty. *Id.* at 11. In particular, § 3583(k) states that "the court shall revoke the term of supervised release and require the defendant to serve a term of imprisonment under subsection [18 U.S.C. § 3583](e)(3) without regard to the exception contained therein. Such term shall be not less than 5 years." 18 U.S.C. § 3583(k).

Mr. Goguen agrees with the Government that the penalty for violating a term of supervised release under § 3583(k) is mandatory. *Def.'s Reply* at 3. However, he argues that this penalty provision does not apply because the Court did not impose a term of supervised release under § 3583(k); rather, the Court used its lawful discretion to impose a term of supervised release under § 3583(b)(2). *Id.* at 3–4.

Mr. Goguen pleaded guilty to 18 U.S.C. § 2250 in 2011. Thus, § 3583(k), by its terms, applies to Mr. Goguen. The question reduces to whether a court must impose a term of supervised release under § 3583(k) when that section applies to a defendant. The Court holds that when it applies, § 3583(k) is mandatory. First, the Court views the plain language of § 3583(k) as phrased in mandatory terms.[7] § 3583(k). The statutory language states that, notwithstanding other provisions in § 3583 relating to supervised release, if an individual is convicted of certain offenses, including 18 U.S.C. § 2250, then "the authorized term of supervised release . . . is any term of years

---

[7]      This interpretation is consistent with the remainder of § 3583(k), which is coached in mandatory language. § 3583(k) ("[T]he court *shall* revoke the term of supervised release and *require* the defendant to serve a term of imprisonment under subsection (e)(3) without regard to the exception contained therein. Such term *shall* be not less than 5 years") (emphasis supplied).

not less than 5, or life." § 3583(k).  Mr. Goguen highlights the word "authorized," but "authorized" in this context relates to a court's discretion to impose a term of supervised release anywhere within the mandatory range of five years to life.  It does not mean that a court has discretion to sentence a qualifying offender to less than five years.

Moreover, caselaw overwhelmingly indicates that § 3583(k) is mandatory.  *See United States v. Medina*, 779 F.3d 55, 58 (1st Cir. 2015) (indicating that the range of supervised release for a sex offense listed under § 3583(k) spans from five years to life); *United States v. Cedillo*, 536 F. App'x 866, 868 (11th Cir. 2013) (providing that a violation of 18 U.S.C. § 2250 has a five-year mandatory minimum term of supervised release and a maximum term of life); *United States v. Kuchler*, 285 F. App'x 866, 868 (3d Cir. 2008); *United States v. Acklin*, 557 F. App'x 237, 240 (4th Cir. 2014); *United States v. Brown*, 826 F.3d 835, 839 (5th Cir. 2016); *United States v. Widmer*, 511 F. App'x 506, 508 (6th Cir. 2013); *United States v. Lewis*, 823 F.3d 1075, 1083 (7th Cir. 2016); *United States v. Garcia*, 604 F.3d 575, 577 (8th Cir. 2010); *United States v. Jackman*, 512 F. App'x 750, 752 (10th Cir. 2013).

As such, the plain language of the statute and the overwhelming weight of authority make clear that § 3583(k) requires the Court to impose a term of supervised release between five years and life.  Contrary to Mr. Goguen's assertions, the Court did not have discretion to impose a term under § 3583(b)(2).  Thus, § 3583(k) applies to Mr. Goguen, and, as both parties admit, the penalty provision of § 3583(k) is mandatory.

### C.    Propriety of Imposing a Term of Imprisonment Under § 3583(k)

Mr. Goguen asserts that the Court "is required to inform a defendant of a mandatory minimum sentence" under Rule 11 so that the "defendant knows the actual consequences of his plea." *Def.'s Mem.* at 6 (citing FED. R. CIV. P. 11(b)(1)(H)). According to Mr. Goguen, "[t]he fairness and integrity of the judicial proceedings" requires that the Court impose a penalty consistent with what the Court told Mr. Goguen at the time of his Rule 11 hearing. *Id.* Because the Court told Mr. Goguen that he was subject to a maximum term of imprisonment of two years following a violation of supervised release under § 3583(e)(3), he insists that the Court may not now impose a more severe penalty based on § 3583(k). *Id.*

Mr. Goguen points to caselaw holding that courts must inform a defendant of the maximum term of supervised release, "including the possibility that he may have to serve a number of years in prison for a violation." *Id.* at 7 (collecting cases). He also cites *United States v. Rivera-Maldonado,* 560 F.3d 16 (1st Cir. 2009), in which the First Circuit held that the District Court committed plain error when it sentenced the defendant to a lifetime of supervised release after mistakenly informing him during the Rule 11 hearing that the maximum period of supervised release was only three years. The First Circuit stated that "[t]here is a huge difference between expecting a three year term of supervised release and expecting one will be subject to such supervision for the rest of one's life." *Id.* at 8 (quoting *Rivera-Maldonado*, 560 F.3d at 8.

Analogizing to the present case, Mr. Goguen argues that there is also a "huge difference" between expecting a two-year term of imprisonment for a violation of supervised release and a term of imprisonment ranging from five years to life. *Id.* Thus, he urges the Court to sentence him in accordance with the penalties that the Court announced in the Rule 11 hearing. *Id.* at 9.

In response, the Government claims that, despite misinforming Mr. Goguen about the potential term of imprisonment following a violation of supervised release, the Court nevertheless satisfied the requirements of a Rule 11 hearing because the Court is not required to advise a defendant of the collateral consequences of pleading guilty. *Gov't's Resp.* at 14. The Government disputes Mr. Goguen's assertion that courts must apprise defendants of the possible consequences of violating supervised release. *Id.* at 16. The Government explains that a term of imprisonment following a supervised release violation is a collateral consequence of pleading guilty, and that caselaw is clear that courts do not need to inform defendants of collateral consequences during a Rule 11 hearing. *Id.* at 13–16. Rather, a court must simply apprise a defendant of the direct consequences of pleading guilty, such as the maximum prison term, fine, and term of supervised release associated with the defendant's conviction. *Id.* at 16.

The Government insists that the caselaw that Mr. Goguen cites, including *Rivera-Maldonado*, does not contradict its position. According to the Government, "[t]hese cases merely stand for the proposition that courts must advise defendants of the potential period of supervised release because that is a direct consequence of a

guilty plea." *Id.* Therefore, because the Court did not even need to inform Mr. Goguen about a term of imprisonment following a violation of supervised release, the Government argues that the Court may impose the correct penalty provision under § 3583(k).

In reply, Mr. Goguen reasserts that Rule 11 required the Court to inform Mr. Goguen of the potential term of imprisonment because it relates to the "maximum possible penalty" that he faced at the time of his guilty plea. *Id.* at 5. Moreover, Mr. Goguen claims that, contrary to the Government's position, at least two circuits require a trial court to inform a defendant of the maximum penalty for violating supervised release at the Rule 11 hearing. *Id.* at 6 (citing *United States v. Taungmaneeratmun*, 925 F.2d 797 (5th Cir. 1991); *United States v. Good*, 25 F.3d 218 (4th Cir. 1994)).

Additionally, Mr. Goguen argues that even if the Government is correct, and the Court did not need to inform Mr. Goguen of the potential term of imprisonment following a supervised release violation, this case is different because the Court actually misinformed Mr. Goguen of the consequences of violating supervised release. *Id.* at 6. He points out that the Government does not cite any caselaw holding that "the Court can incorrectly advise a defendant of a lesser maximum penalty and then impose a significantly higher penalty." *Id.* at 7 n.3. Mr. Goguen emphasizes that the Government did not object at the sentencing hearing when the Court imposed a term of supervised release with a maximum penalty of two years for a violation. *Id.* at 9.

27

Thus, according to Mr. Goguen, the Government cannot now come before the Court and ask it to impose the penalty provisions of § 3583(k).  *Id.*

The Court concludes that Rule 11 did not require the Court to inform Mr. Goguen at his plea colloquy that he could face a term of imprisonment if he violated the terms of his supervised release.  Rule 11 states that "[b]efore the court accepts a plea of guilty…the court must inform the defendant of…(H) any maximum possible penalty, including imprisonment, fine, and term of supervised release[.]"  FED. R. CRIM. P. 11(b)(1)(H).  The Rule includes a list of penalties that the Court must discuss during the plea colloquy.  The list does not include a potential term of imprisonment following a supervised release violation.  This omission is unsurprising.  The penalties listed in Rule 11—imprisonment, fines, and terms of supervised release— all directly punish the offense of conviction.  However, a term of imprisonment following a supervised release violation is not meant to punish the original offense.  Rather, it serves to punish the violation of the supervised release.  *See Parry v. Rosemeyer*, 64 F.3d 110 (3rd Cir. 1995) ("[The] sentence of imprisonment upon revocation of probation is not generated by the plea but by the defendant's own unwillingness or inability to conform to the restrictions imposed as part of probation").  As such, it is not part of the "maximum possible penalty" for the original offense.

There exists a practical element as well.  The Court is able to discuss the original term of imprisonment, fine, and terms of supervised release at the Rule 11 hearing because the Court is aware of the conduct surrounding the original offense,

and that conduct forms the basis of the punishment.  However, "[t]here is no way for a court presiding over a Rule 11 hearing to know whether, or in what manner, or how many times, a defendant will violate supervised release." *United States v. Lewis*, 504 F. Supp. 2d 708, 713 (W.D. Mo. 2007).  In most cases, the Court is unable to rehearse the maximum possible term of imprisonment following a supervised release violation because it is impossible to predict the circumstances, timing, or number of the violations.  Therefore, the Court agrees that "Rule 11 does not require a detailed analysis and explanation of the possible consequences for violating supervised release—nor could it." *Id.*

Caselaw reinforces the Court's position.  The First Circuit instructs that "a defendant need not be informed of all the collateral consequences of a guilty plea" during the Rule 11 hearing. *United States v. Ocacsio-Cancel*, 727 F.3d 85, 89 (1st Cir. 2013) (citing *Steele v. Murphy*, 365 F.3d 14, 17 (1st Cir. 2004)).  However, the Court must inform the defendant of the direct consequences of his plea. *Id.* (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  "[T]he distinction between a direct consequence and a collateral consequences 'turns on whether the consequence represents a definite, immediate, and largely automatic effect on the range of a defendant's punishment.'" *Id.* (quoting *Steele*, 365 F.3d at 14).

At the time of the Rule 11 hearing, the fact that Mr. Goguen might serve a term of imprisonment for violating a term of supervised release constituted a collateral consequence of his guilty plea.  His additional term of incarceration was not "a definite, immediate, and largely automatic effect" flowing from his guilty plea.

29

Rather, the application of the five-year term of imprisonment under § 3585(k) depended on the happening of a series of contingent events:

(1) If Mr. Goguen were required to register as a sex offender under SORNA; and

(2) If he committed a new criminal offense; and,

(3) If the new criminal offense was an offense for which a term of imprisonment of greater than one year could be imposed; and

(4) If the new criminal offense fell within the criminal offenses set forth in Chapter 109A, 110, or 117 or sections 1201 or 1591;

(5) Then, the mandatory five-year and potential lifetime imprisonment provision of § 3583(k) would apply.

18 U.S.C. § 3583(k).

Moreover, revocation "may or may not occur sometime in the future, and whether it occurs is dependent on the actions of the defendant." *Parry*, 64 F.3d at 114. Thus, Rule 11 did not require the Court to inform Mr. Goguen about the potential term of imprisonment following a violation of supervised release. *See Parry*, 64 F.3d 110, 114–15 (holding that the District Court did not need to advise defendant of a sentence of imprisonment upon a revocation of probation because the sentence was a collateral consequence of the guilty plea); *United States v. Powers*, 29 F.3d 636 at *1 ("[A] probation violation is similar to other types of events which have been termed 'collateral consequences' of a guilty plea. The district court is not required to inform the defendant of the collateral consequences of pleading guilty"); *see also*

*Ocasio-Cancel* 727 F.3d at 90 (holding that the imposition of a consecutive sentence is a collateral consequence of pleading guilty); *Steele*, 365 F.3d at 17 (holding that the possibility of commitment for life as a sexually dangerous person is a collateral consequence of pleading guilty).

Mr. Goguen asserts that "[a]t least two Circuits require the Court to inform a defendant of the maximum penalty for a supervised release violation at the Rule 11 hearing," citing *United States v. Tuangmaneeratmun*, 925 F.2d 797 (5th Cir. 1991), and *United States v. Good*, 25 F.3d 218 (4th Cir. 1994). However, these cases involved an earlier version of Rule 11 that required courts to inform defendants of "the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term." *Tuangmaneeratmun*, 925 F.2d at 802; *Good* 25 F.3d at 219. By contrast, the current Rule 11 simply requires courts to inform defendants of "the maximum possible penalty, including imprisonment, fine, and term of supervised release[.]" FED. R. CRIM. P. 11(b)(1)(H). Mr. Goguen does not identify—nor can the Court locate—any cases that require courts to inform defendants of the maximum penalties for supervised release violations under the current statutory language.

That the Court was not required to inform Mr. Goguen of a potential term of imprisonment following a supervised release violation does not end the inquiry in this case. Here, the Court actually misinformed Mr. Goguen about the penalties he faced if he violated the terms of his supervised release. The Court informed him that he

faced a maximum additional imprisonment term of two years, when he in fact faced a minimum of five years and a maximum of life under § 3583(k). Given the unique circumstances of this case, fundamental fairness compels the Court to sentence Mr. Goguen in accordance with the penalties the Court described during Mr. Goguen's plea colloquy.

To add to this point, the Court is highly conscious of Mr. Goguen's past and recent history. Mr. Goguen has had a demonstrably difficult time obeying society's laws and judicially-imposed supervised release conditions. The Court has discussed Mr. Goguen's 1996 sexual assault in Connecticut, when at the age of 20, he sexually assaulted an intoxicated sixteen-year-old victim who was passed out. This crime was one of eight crimes Mr. Goguen committed from age 18 through age 32. *PSR* ¶¶ 23–30. One of those convictions was in 2006 in the commonwealth of Massachusetts for failure to register as a sex offender. *Id.* ¶ 28.

On January 12, 2011, Mr. Goguen was indicted federally for his failure to register as a sex offender when he came to Maine, and on September 14, 2012, he was sentenced to 37 months of incarceration with three years of supervised release to follow. *J.* (ECF No. 80); *Am. J.* (ECF No. 90). Before the federal charge was initiated, Mr. Goguen had been arrested on July 29, 2010, on a state charge of unlawful sexual contact with a minor. *PSR* ¶ 42. In calculating Mr. Goguen's guideline sentence range, the Court imposed an eight-level enhancement under U.S.S.G. § 2A3.5(b)(1)(C) because Mr. Goguen had committed a sex offense against a minor while he was in failure-to-register status. *Statement of Reasons* Attach. 1, *Findings Affecting*

32

*Sentencing* ¶ 3 (ECF No. 81).  The state charge was dismissed on July 10, 2012.  *PSR* ¶ 42.

Mr. Goguen was initially released from incarceration on May 11, 2013.  On May 23, 2013, the Probation Office filed a consented-to modification of the terms of his supervised release because Mr. Goguen was found in possession of a computer with numerous pornographic images and videos.  *Req. for Modifying the Conditions or Term of Supervision with Consent of the Offender* (ECF No. 93).  On May 28, 2013, the Court modified the terms of supervised release to require Mr. Goguen to comply with the requirements of the District's computer and internet monitoring program. *Order Granting Pet. to Modify Supervised Release* (ECF No. 95).

On August 16, 2013, the Probation Office filed a petition for warrant for offender under supervision.  *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 96).  This time the Probation Office alleged that Mr. Goguen accessed pornography on the law library computers at the Penobscot County Judicial Center.  *Id.* at 1–2.  On September 23, 2013, Mr. Goguen admitted the violation, and the Court imposed a five-month sentence.  *Minute Entry* (ECF No. 112); *Revocation J.* (ECF No. 113).

On January 17, 2014, Mr. Goguen was released from incarceration and began his most recent term of supervised release.  *Revocation Report* at 6.  On November 13, 2015, the Probation Office brought another petition to revoke Mr. Goguen's supervised release.  *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 144) (*Pending Pet.*).  This time, the Probation Office alleged that Mr.

Goguen had committed the offense of possession of child pornography and had possessed other types of pornography in violation of the terms of his sex offender treatment program.  *Id.* at 2.  It is this petition that is currently pending before the Court.

For many defendants, a judicial recitation of contingencies at the Rule 11 hearing that describes a possible mandatory minimum punishment of five years and up to life for the commission of a future sex offense while on supervised release is not especially significant because they do not intend to commit another sex offense.  But for Mr. Goguen, given his inability to conform his actions to the conditions of supervised release, this additional information may have given him pause.  At the very least, the Court's statement that he faced only a maximum of two years' incarceration for a violation of the conditions of supervised release could have misled Mr. Goguen about the true consequences of his guilty plea and the likely penalty he faced if he violated a condition of supervised release.

The Court takes its lead from the principles set forth in *DeWitt v. Ventetuolo*, 6 F.3d 32 (1st Cir. 1993).  In *DeWitt*, the Rhode Island Superior Court mistakenly suspended all but 15 years of a convicted defendant's life sentence.  Six years later, the Superior Court corrected its mistake and reimposed the original sentence.  *Id.* at 33.  The First Circuit wrote that there is "no general rule that prohibits a court from increasing an earlier sentence where the court finds that it was erroneous and that a higher sentence was required by law."  *Id.* at 34.  Stated another way, "[a] convicted defendant does not automatically acquire a vested interest in a mistakenly low

34

sentence." *Id.* at 35.   However, the First Circuit recognized that notions of fundamental fairness "must impose some outer limit on the power to revise sentences upward after the fact." *Id.* at 34.   "[T]here is no single touchstone for making this judgment," but in certain extreme cases, "a court can properly say that the later upward revision of a sentence, made to correct an earlier mistake, is so unfair that it must be deemed inconsistent with fundamental notions of fairness[.]" *Id.* at 35.   The First Circuit ultimately held that the Superior Court's reimposition of a higher sentence was fundamentally unfair because the Government did not seek judicial correction for over six years, the defendant did not know that the Court made a mistake, and that the defendant was actually released on probation before the Court reimposed his life sentence. *Id.* at 35–6.

Although the facts of the present case differ somewhat from *DeWitt*, the principles of fairness remain the same.   At the plea colloquy, the Court mistakenly informed Mr. Goguen that he faced no more than three years of supervised release under § 3583(b)(2) and no more than two years of imprisonment for a violation of that supervised release under § 3583(e)(3).   The Court sentenced Mr. Goguen to, among other things, three years of supervised release without remedying the earlier error. The Court, the Probation Office, and the parties failed to correct the mistake.   Now, following a violation of the supervised release, the Government asks the Court for the first time to correct the error and impose the penalties associated with § 3583(k).   Yet, as mentioned before, the penalties of § 3583(k) dramatically escalate the term of incarceration facing Mr. Goguen, from a maximum of two years to a minimum of five

years and a maximum of life.  Given the drastic increase in punishment facing Mr. Goguen, the time that has elapsed since the original mistake, and the fact that the error escaped the notice of all parties until now, the Court concludes that this is one such "extreme case" in which a subsequent upward revision, made to correct an earlier mistake, is so unfair that it must be deemed inconsistent with fundamental notions of fairness.  *See DeWitt*, 6 F.3d at 36.  Accordingly, the Court will cap the potential term of imprisonment for a supervised release violation in this case to two years in accordance with the Court's description of the penalties at the plea colloquy.

Finally, the context of this decision is solely the pending petition for revocation of supervised release.  The allegation in the petition is that Mr. Goguen committed a new federal crime, namely possession of child pornography.  *Pending Pet.* at 2 ("Beginning on an unknown date and continuing until November 10, 2015, the defendant committed the offense of Possession of Child Pornography, in violation of federal law").  This decision neither prevents the Government from initiating a new criminal charge against Mr. Goguen for this new conduct nor encourages the Government to do so.  If the Government does, the restrictions on the imposed penalties described in this opinion would not apply, but unlike the more probable than not standard for a violation of supervised release, the Government would be compelled to prove his new criminal conduct beyond a reasonable doubt.

## III.  CONCLUSION

Mr. Goguen violated 18 U.S.C. § 2250, and thus the Court was required to impose a term of supervised release between five years and life under 18 U.S.C. §

3583(k).  Because the Court misinformed Mr. Goguen at the Rule 11 hearing that the maximum term of incarceration for a violation of the terms of supervised release was two years, the Court will limit Mr. Goguen's potential term of imprisonment to a maximum of two years.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 2nd day of November, 2016