UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:16-cr-00167-JAW |
| | ) | |
| ROBERT GOGUEN, | ) | |
| | ) | |
| Defendant | ) | |

_____

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:11-cr-00003-JAW |
| | ) | |
| ROBERT GOGUEN, | ) | |
| | ) | |
| Defendant | ) | |

## RECOMMENDED DECISION ON MOTION TO SUPPRESS

Following a search of a laptop computer seized from Defendant's apartment, the Government charged Defendant with one count of possession of child pornography (1:16-cr-00167-JAW) and also moved to revoke Defendant's conditions of supervised release. (1:11-cr-00003-JAW.) The matter is before the Court on Defendant's motion to suppress evidence obtained during the search. (ECF No. 174.[1] After a hearing and upon consideration of the parties' arguments, I recommend the Court deny the motion.

### Proposed Findings of Fact

Based on the evidence, I recommend the Court find the following facts:

---

[1] Citations to the docket shall reference the docket in 1:11-cr-00003-JAW unless otherwise noted.

1. In September 2012, Defendant was sentenced in 1:11-cr-00003-JAW for the failure to register as a sex offender. The sentence included a three-year period of supervised release upon conclusion of a 16-month prison sentence.

2. In May 2013, the terms of Defendant's supervised release were amended to require Defendant to comply with the Computer and Internet Monitoring Program because Defendant had been found to possess a laptop computer with numerous pornographic images and videos.

3. In September 2013, Defendant was adjudged to be in violation of his conditions of release for violating the policies and procedures of the sex offender treatment program in which he was required to participate. On the violation, the Court sentenced Defendant to five months in prison and 31 months of supervised release.

4. Under the terms of the sex offender treatment program in which Defendant was required to participate, Defendant was prohibited from possessing or viewing any pornographic material.

5. In October and November 2015, Defendant was subject to the conditions of supervised release in 1:11-cr-00003-JAW. The United States Probation Office was responsible for supervising Defendant and monitoring his compliance with the terms of his supervised release. Probation officers Mitchell Oswald and Joseph Maloney were involved in the supervision of Defendant.

6. On October 28, 2015, the United States Probation Office received an anonymous tip regarding Defendant. The Probation Office summarized the tip in a memorandum as follows: [The tipster's] niece takes her children to the Together

Place food pantry often and [] [defendant] is working there. [The tipster] found out about [defendant's] past, as there was a newspaper article in the Bangor Daily News recently. They started doing a little research and asking about [defendant] because [defendant] has been hanging around the neighborhood, showing porn to children and bragging about getting away with doing stuff he is not supposed to and duping the government. [The tipster] believes that [defendant] was using Klonopin last night. [The tipster] said that [defendant] has a blue laptop and also a smart phone and [defendant] changes the sim cards in his phone to conceal the dirty pictures.

7. The probation office did not receive any information about the tipster other than the information contained in the memorandum of the communication.

8. Prior to receiving the tip, Officer Oswald was aware Defendant lived next to the food pantry, was aware Defendant frequented the food pantry, was aware of the newspaper article as Defendant had mentioned the article to Officer Oswald, was aware that Defendant had previously accessed pornography in violation of the terms of the sex offender treatment program in which Defendant was required to participate, and was aware that in May 2013, the terms of Defendant's supervised release were amended to require Defendant to comply with the Computer and Internet Monitoring Program because Defendant had been found to possess a laptop computer with numerous pornographic images and videos.

9. The terms of Defendant's supervised release included the following provision: Defendant shall at all times readily submit to a search of his residence, and of any premises under his dominion and control, by his supervising officer, upon the

officer's request when the officer has reasonable basis to believe that such a search will lead to the discovery of evidence in violation of the terms of supervised release, including pornographic materials that Defendant is prohibited from possessing under the rules of his sex offender treatment program.

10. On November 10, 2015, Officers Oswald and Maloney appeared at Defendant's apartment to conduct a home visit and asked Defendant about the allegations made by the tipster.

11. The officers knocked on the door to Defendant's apartment, and forty-five seconds later, Defendant appeared at the door.

12. Defendant appeared to Officer Oswald to be anxious and unusually nervous.

13. To Officer Oswald, the apartment appeared to be in a state of disarray. Officer Oswald noticed a blue laptop on Defendant's bed. Defendant's bed was in the room by which the officers entered the apartment. The computer was partially covered by a quilt or a blanket.

14. When Defendant was asked whether the computer was his and how long he had the computer, Defendant reported that a friend had given it to him to repair, that he did not remember the friend's name, and that he could not access the computer because he did not know the password.

15. When Defendant was asked whether the computer would contain pornography or any other items Defendant was prohibited from possessing, Defendant stated he did not know as he did not have access to the content on the computer.

16. Because Defendant reported he believed his apartment was infested with bed bugs

and because Officers Oswald and Maloney were concerned that Defendant could destroy evidence on the computer if they did not remove it from the apartment, Officers Oswald and Maloney decided to take the computer with them.

17. Before attempting to access the computer while in his office, Officer Oswald called Defendant to ask again for the password. Defendant again denied he knew the password.

18. Subsequently, when Officer Oswald opened the laptop, he learned the computer was not password-protected. Officer Oswald noted the computer contained images of child pornography and other related images.

19. Based in part on information Officer Oswald obtained as the result of his seizure and search of the computer, the Government applied for and obtained a warrant to search the computer. A search of the computer was conducted pursuant to the warrant.

## Discussion

Defendant contends Officer Oswald did not have sufficient bases to seize and search the computer and, therefore, evidence obtained during the initial search and the search conducted pursuant to the warrant should be excluded at trial.

Defendant's conditions of supervised release provide in pertinent part:

Defendant shall at all times readily submit to a search of his residence, and of any premises under his dominion and control, by his supervising officer, upon the officer's request when the officer has reasonable basis to believe that such a search will lead to the discovery of evidence in violation of the terms of supervised release, including pornographic materials that Defendant is prohibited from possessing under the rules of his sex offender treatment program.

The "reasonable basis to believe" standard satisfies Fourth Amendment requirements. *United States v. Knights*, 534 U.S. 112, 121 (2001) (holding that, with probationer, reasonable suspicion is constitutionally sufficient to support a warrantless search where the conditions of probation authorize it).

Defendant argues Officer Oswald did not have a reasonable basis to believe the computer contained evidence of a violation of the terms of Defendant's supervised release because the anonymous source of the tip was unreliable. "Unlike a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated, 'an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity.'" *Florida v. J.L.,* 529 U.S. 266, 270 (2002) (quoting *Alabama v. White,* 496 U.S. 325, 329 (1990)). An anonymous tip can support a reasonable basis determination when there are sufficient indicia of reliability, which indicia can include corroboration. *United States v. Aviles-Vega*, 783 F.3d 69, 74 (1st Cir. 2015); *United States v. Monteiro,* 447 F.3d 39, 45 – 48 (1st Cir. 2006).

Here, the information contained in the tip was consistent with facts known to Officer Oswald before the probation office received the tip. The tipster reported Defendant was at the food pantry; Officer Oswald knew Defendant lived next to and frequented the food pantry. The tipster reported he/she learned about Defendant's history through an article in the Bangor Daily News; Officer Oswald was aware of a recent article about Defendant in the Bangor Daily News. The tipster reported Defendant, using a computer, was viewing and showing pornography to others; Officer Oswald knew that Defendant had previously

accessed pornography in violation of the terms of the sex offender treatment program in which Defendant was required to participate, and that in May 2013, the terms of Defendant's supervised release had been amended to require Defendant to comply with the Computer and Internet Monitoring Program because Defendant had been found to possess a laptop computer with numerous pornographic images and videos. The reliability of the tipster was further enhanced when Officer Oswald observed a blue laptop – the tipster described Defendant as showing the images on a blue laptop – in Defendant's apartment.

Additionally, Officer Oswald's decision to seize and search the laptop was not based entirely on the information obtained from the tipster. Officer Oswald also relied on Defendant's explanation for Defendant's possession of the laptop. Defendant explained that he had the computer to repair it for a friend, but told Officer Oswald that he did not know the friend's name and did not have the password to the computer. Officer Oswald reasonably questioned Defendant's explanation, which appeared designed to divert Officer Oswald's attention from the computer. Officer Oswald, who had numerous interactions with Defendant, also found Defendant to be anxious and nervous, which understandably increased Officer Oswald's suspicions.

A review of the "totality of the circumstances," *Knights*, 534 U.S. 118, thus reveals that the information provided by the anonymous source was sufficiently corroborated to establish the reliability of the information, and that the information established reasonable suspicion that the blue laptop in Defendant's apartment contained evidence of a violation of the terms of Defendant's supervised release. Defendant's statements and overall conduct during the home visit on November 10 provided additional support for such a

finding. Accordingly, Defendant's contention that Officer Oswald lacked a sufficient basis to seize and search Defendant's computer fails.[2] Furthermore, because Officer Oswald's actions were lawful, the Government's use of his findings to support the Government's request for a search warrant did not constitute the exploitation of a prior unlawful search and, consequently, did not taint the supporting affidavit or the warrant authorizing the search of the computer. *Wong Sun v. United States*, 371 U.S. 471, 487 – 88 (1963).

**Conclusion**

Based on the foregoing analysis, I recommend the Court deny Defendant's motion to suppress.

**NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 5th day of May, 2017.

---

[2] The Government also argues that the exclusionary rule does not apply to the hearing on the Government's motion to revoke Defendant's supervised release in 1:11-cr-00003-JAW. Because I have recommended the denial of Defendant's motion on its merits, I have not addressed the Government's alternative argument in 1:11-cr-00003-JAW.