# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:11-cr-00003-JAW |
| | ) | |
| ROBERT GOGUEN | ) | |

## ORDER ON MOTION FOR THE ARTICLE III JUDGE TO PROVIDE BY ANY EQUITABLE MEANS NECESSARY BY INDICATIVE RULING RELIEF IN AN EXPEDITED MANNER

The Court denies a defendant's 2020 pro se motion for an indicative ruling to allow him to file an untimely appeal of a January 30, 2013, amended criminal judgment.

## I.   BACKGROUND

On January 12, 2011, a federal grand jury indicted Robert Goguen for violating the Sex Offender Notification and Registration Act (SORNA), 18 U.S.C. § 2250(a), by failing to register as a sex offender after having been convicted of a sex offense in Connecticut in 1996. *Indictment* (ECF No. 1).  On July 14, 2011, Mr. Goguen pleaded guilty to the charge in the indictment, *Min. Entry* (ECF No. 43), and on September 14, 2012, the Court sentenced Mr. Goguen to sixteen months of incarceration with credit for time served from April 11, 2012, three years of supervised release, and a $100 special assessment; the Court imposed no fine.  *Min. Entry* (ECF No. 79); *J.* (ECF No. 80).  By agreement, on January 30, 2013, the Court amended the judgment to clarify that the sentence was thirty-seven, not sixteen, months of incarceration. *Order Granting Mot. to Amend J.* (ECF No. 89); *Am. J.* (ECF No. 90).  Mr. Goguen did not appeal his conviction or sentence.

For purposes of this motion, the next significant docket event was a petition to revoke his supervised release, based on an alleged failure to comply with the conditions of supervised release by accessing pornography at a county law library. *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 96).   On September 23, 2013, Mr. Goguen admitted the violation, *Min. Entry* (ECF No. 112), and the Court sentenced him to five months of incarceration and thirty-one months of supervised release. *Revocation J.* (ECF No. 113).  On October 1, 2013, Mr. Goguen appealed the revocation judgment to the Court of Appeals for the First Circuit. *Notice of Appeal* (ECF No. 116) (*Revocation Notice of Appeal*).  On October 9, 2014, the First Circuit affirmed the revocation judgment, *J. of United States Ct. of Appeals for the First Circuit* (ECF No. 142) (*First Circuit J.*), and on November 6, 2014, it issued its mandate. *Mandate* (ECF No. 143).

On November 13, 2015, the United States Probation Office initiated a second petition for revocation of supervised release alleging that Mr. Goguen violated the terms of his supervised release by committing new criminal conduct by possessing child pornography and that, in doing so, he violated the condition of his supervised release that required he comply with the terms of his sex offender treatment program. *Pet. for Warrant or Summons for Offender under Supervision* (ECF No. 144).  On September 15, 2017, Mr. Goguen admitted counts one and two of his supervised release violations. *Min. Entry* (ECF No. 193).  Despite his having admitted the two violations on September 15, 2017, for a variety of reasons, mostly related to Mr.

2

Goguen's active litigation, the Court has not yet sentenced Mr. Goguen on these violations.

Mr. Goguen has extensively litigated his case.  There are now three-hundred and fifty docket entries on this case alone.  In addition to other matters, on November 28, 2017, Mr. Goguen file a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.  *Mot. to Vacate, Set Aside or Correct Sentence (2255)* (ECF No. 194) (*Mot. to Vacate*).[1]  On September 28, 2018, the Magistrate Judge recommended that the Court deny Mr. Goguen's habeas corpus petition and deny a certificate of appealability, *Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 253) (*Recommended Decision*), and on February 7, 2019, the Court affirmed the Magistrate Judge's recommended decision over Mr. Goguen's objection.  *Order Affirming Recommended Decision on 28 U.S.C. § 2255 Mot.* (ECF No. 280) (*Order Affirming*).  Mr. Goguen appealed.  *Notice of Appeal* (ECF No. 281).  On February 24, 2020, the Court of Appeals for the First Circuit affirmed this Court's denial of a certificate of appealability, *J. of United States Ct. of Appeals for the First Circuit* (ECF No. 324) (*2020 First Circuit J.*), on June 8, 2020, the First Circuit denied Mr. Goguen's petition for rehearing and petition for rehearing en banc, *Order of Court*, *United*

---

[1]      Though the docket reflects that this motion was not docketed until December 15, 2017, the prison mailbox rule controls the date of filing of incarcerated individuals' filings in certain contexts, including under 28 U.S.C.§ 2255.  *See Morales-Rivera v. United States*, 184 F.3d 109, 109-10 (1st Cir. 1999) (holding that the prison mailbox rule applies to motions under 28 U.S.C. § 2255).  Mr. Goguen's motion does not include a declaration regarding when it was mailed.  However, Mr. Goguen dated his response on November 28, 2017, *Mot. to Vacate* at 1, and the Court adopts that date as the date of filing.  The Court applies this logic to further related filings by Mr. Goguen that do not include declarations regarding when they were mailed for the purpose of this Order.

*States v. Goguen*, 19-1164 (1st Cir. June 8, 2020), and on June 15, 2020, the First Circuit issued its mandate on the judgment. *Mandate* (ECF No. 348).

While the appeal of his habeas corpus petition was pending, on April 22, 2019, Mr. Goguen through counsel filed a motion to withdraw his guilty plea on a new criminal charge reflected in *United States v. Goguen*, 1:16-cr-00167-JAW, as well as his admission to his violation of supervised release in this case. *Mot. to Withdraw Guilty Plea* (ECF No. 289; ECF No. 113).[2]  On September 6, 2019, the Court denied Mr. Goguen's motion to withdraw his guilty plea and admission. *Order on Def.'s Mot. to Withdraw Guilty Plea* (ECF No. 293; ECF No. 120).

As his November 13, 2019, sentencing hearing date approached, *see Notice of Hr'g* (ECF No. 294; ECF No. 121), on September 23, 2019, Mr. Goguen filed an ex parte motion requesting authorization to proceed pro se. *Ex Parte Filing Mot. Requesting Authorization to Proceed Pro Se* (ECF No. 296; ECF No. 123).  The Court held a hearing on the motion on October 22, 2019. *Min. Entry* (ECF No. 300; ECF No. 125).  At the hearing, Mr. Goguen complained about the failure of his attorney to pursue legal arguments in the motion to withdraw guilty plea and admission that Mr. Goguen was convinced were meritorious.  Of the view that Mr. Goguen would harbor a sense of injustice unless it allowed him to file his own motion, the Court authorized Mr. Goguen to file a pro se motion to withdraw his guilty plea and admission. *Id.*; *Oral Order Granting in Part Ex Parte Mot. to Appear Pro Se* (ECF

---

[2]      When a document appears on both of Mr. Goguen's criminal dockets, the first ECF number is a citation to 1:11-cr-00003-JAW and the second is a citation to 1:16-cr-00167-JAW.  Citations to a single docket number reference the docket for 1:11-cr-00003-JAW.

No. 301; ECF No. 126).  Mr. Goguen did so on January 10, 2020.  *Def.'s Pro Se Mot. to Withdraw Guilty Plea(s) and Req. for Order to Disqualify Hon. John A. Woodcock, Jr.* (ECF No. 309; ECF No. 132).[3]  Contemporaneously with this order, the Court is issuing an order on that part of the motion in which Mr. Goguen asks to be allowed to withdraw his guilty pleas.  *See Order on Mot. to Withdraw Guilty Plea and Admission* (ECF No. 350; ECF No. 159) (*Order on Second Mot. to Withdraw Plea and Admission*).

Finally, although not expressly authorized to do so, Mr. Goguen filed the instant additional pro se motion on April 13, 2020.  *Req. for Article III Judge to Provide by Any Equitable Means Necessary by Indicative Ruling Relief in Expedited Manner* (ECF No. 331) (*Def.'s Mot.*).[4]  On May 12, 2020, the Government responded.  *Gov't's Obj. to Def.'s Req. for Article III Judge to Provide by Any Equitable Means Necessary by Indicative Ruling Relief in Expedited Manner* (ECF No. 337) (*Gov't's Opp'n*).[5]  On May 18, 2020, Mr. Goguen replied to the Government's response.  *Def.'s Reply to Gov't's Resp. Regarding Mot. for Relief* (ECF No. 344) (*Def.'s Reply*).

---

[3]     On February 24, 2020, I denied the part of Mr. Goguen's motion that requested I recuse myself.  *Order on Def.'s Mot. to Recuse* (ECF No. 323; ECF No. 144).  On February 27, 2020, Mr. Goguen filed a notice of interlocutory appeal of the recusal order to the Court of Appeals for the First Circuit.  *Def.'s Notice of Appeal* (ECF No. 326; ECF No. 146).  On May 20, 2020, the Court of Appeals dismissed Mr. Goguen's interlocutory appeal at his request.  *J. of United States Ct. of Appeals for the First Circuit* (ECF No. 342; ECF No. 156); *Mandate* (ECF No. 343; ECF No. 155).

        On January 19, 2020, Mr. Goguen filed corrections for some of the pages of his motion.  *Corrections* (ECF No. 312; ECF No. 135); *id.*, Attach. 1, *Cover Letter*.

[4]     As is indicated by the title of Mr. Goguen's motion, he asked that the Court rule on his motion in an expedited fashion.  *Def.'s Mot.* at 1.  On April 17, 2020, the Court denied Mr. Goguen's request for an expedited ruling.  *Order* (ECF No. 332).

[5]     The Government inadvertently failed to file a timely objection to Mr. Goguen's April 13, 2020, motion and filed a motion to be allowed to file a late response.  *Gov't's Mot. to Extend Deadline for Filing Its Resp. to Def.'s Req. for Article III Judge to Provide by Any Equitable Means Necessary by Indicative Ruling Relief in Expedited Manner* (ECF No. 335).  Mr. Goguen objected to the late response, *Def.'s Obj. to Gov't's Mot. to Extend Deadline for Responding* (ECF No. 340), and on June 2, 2020, the

In this order the Court addresses Mr. Goguen's April 13, 2020, motion for indicative ruling.

## II.   PARTIES' POSITIONS

### A.   Robert Goguen's Motion

#### 1.   "A Rather Grave Judicial Error"

In his motion, Mr. Goguen requests relief against "a rather grave judicial error concerning [his] request to file an untimely notice of appeal of the conviction judgment entered September 2012 (ECF 133)." *Def.'s Mot.* at 1. He alleges that "[t]he Court has failed to process the unobjected petition to enter a notice of appeal against the conviction judgment by mistakenly construing it as a notice of notice for appeal of the revocation judgment." *Id.*

#### 2.   An Illicit Seizure of Sixth Amendment Autonomy

Mr. Goguen asserts that "on 22 May 2012," one of his former defense lawyers, Jon Haddow, "illicitly seized control of [his] Sixth Amendment autonomy by perfidiously withdrawing the pro se petition requesting to withdraw the guilty plea and maintain innocence of the conviction judgment." *Id.* Mr. Goguen says that "[c]ounsel's conduct was in sharp conflict with explicitly expressed defense objectives to pursue a plea withdrawal and then proceed with a jury trial." *Id.* He adds that "[w]hile cognizant the Court specifically advised [him] Attorney Haddow would be the only substitute counsel the Court would make, [he] attempted to persuade counsel to advocate [his] case." *Id.* at 1-2.

---

Court overruled Mr. Goguen's objection and granted the Government's motion for late response. *Order on Obj. to Mot. for Extension of Time* (ECF No. 346).

Mr. Goguen charges that after Attorney Haddow "perfidiously withdrew [his] pro se motion [to withdraw] he kept his distance . . .." *Id.* at 2. However, Mr. Goguen notes that he "was still facing sentencing and needed counsel." *Id.* Mr. Goguen refers to a letter he wrote Attorney Haddow on August 24, 2012, a copy of which he attached to his motion. *Id.*; *Def.'s Mot.*, Attach. 1, *Ex. A: Letter from Robert Goguen to "Dear Jon."* Mr. Goguen says that in the letter, he "conservatively expressed [his] discontent, and detailed circumstances supporting innocence or significant mitigating factors, hoping counsel would feel remorseful." *Def.'s Mot.* at 2. He writes that in the letter, he informed Attorney Haddow that he had notified and kept Massachusetts informed that he had relocated to Maine, that he did not have a qualifying predicate offense as defined by SORNA, and that if anything, he was a Tier I offender. *Id.* He notes that he told Attorney Haddow that there were "a few more arguments" he would like to challenge in court and preserve for appeal. *Id.* But, he says, Attorney Haddow "never raised or preserved a single issue, nor did he file a timely notice of appeal to preserve [Mr. Goguen's] right to appeal the conviction judgment." *Id.*

### 3.    The First Petition for Revocation of Supervised Release

Mr. Goguen then refers to the petition for revocation of his supervised release that took place within three months of his release from incarceration. *Id.* He says that when Attorney Haddow was appointed to represent him, Mr. Goguen asked him about the status of his appeal and Attorney Haddow "simply ignored [him]." *Id.* He writes that "[t]his is when [he] realized Attorney Haddow was more likely not

working on [his] appeal." *Id.* Mr. Goguen says that after the revocation sentencing, he "filed two notices of appeal . . .." *Id.* One, he acknowledges, was "untimely regarding the conviction judgment;" the other was to appeal the revocation judgment. *Id.* But he asserts that "only the latter was docketed and processed for appeal." *Id.* Mr. Goguen says that "[r]elying on logic [he] petitioned the First Circuit directly, 'to make [it] aware [he] intended to appeal [conviction] judg[]ment separately [from] revocation.'" *Id.* (some alterations in original).

### 4. A 2013-14 Attempted Appeal

Mr. Goguen attaches a letter that he sent to "Ms. Carter" dated November 20, 2013, that has a First Circuit date stamp of November 29, 2013, in which he refers to a letter he sent to the "federal court" in September 2013. *Def.'s Mot.*, Attach. 2, *Ex. B* at 2 (*Letter Attachs.*). In his November 20, 2013, letter, Mr. Goguen mentions that in his September 2013 letter, he requested "an appeal from [his] conviction of Failure to Register." *Id.* at 1. Also in the November 20, 2013, letter, he says he appealed his revocation judgment in October 2013, but he writes that the earlier appeal of conviction "seems to have not been processed." *Id.* The letter says that Mr. Goguen was writing to Ms. Carter "to make [her] aware that [he] intended to appeal initial conviction separately to revocation." *Id.* In his motion, Mr. Goguen characterizes his letter to Ms. Carter, saying that he "petitioned the First Circuit directly . . .." *Def.'s Mot.* at 2. Mr. Goguen does not attach a response, if he received one, from the First Circuit to his November 20, 2013, letter.

In his motion, Mr. Goguen says that on December 12, 2013, he wrote the court (presumably referring to the Clerk of the District Court), saying that he was in the process of appealing the "conviction judgment" and asking for "documents [he] thought would be helpful." *Id.* at 3. Mr. Goguen attaches a difficult to read letter dated December 12, 2013, to the Clerk of Court that the District Court date stamped December 19, 2013, in which he wrote that he was "in the process of moving for an appeal on original sentence." *Letter Attachs.* at 4. He notes that Magistrate Judge Margaret Kravchuk responded to his December letter on January 2, 2014, stating that "if [Mr.] Goguen wishes to file an untimely pro se appeal of his original conviction, he must do so with his own submission." *Def.'s Mot.* at 3 (quoting *Order Granting in Part and Denying in Part Mot. for Photocopies at Gov't Expense* (ECF No. 128) (*Kravchuk Order*)).

Mr. Goguen turns to correspondence with his appellate attorney Gail Latouf, noting that Attorney Latouf reported to him that she only represented him on the appeal "of the supervised release" and that was the "only pending appeal of which [she was] aware." *Id.* (quoting *Def.'s Mot.*, Attach. 3, *Ex. C: Letter from Att'y Latouf to Robert Goguen* at 2 (*Latouf Dec. 12, 2013, Letter*)). Mr. Goguen acknowledges that in her December 12, 2013, letter, Attorney Latouf told him that the deadline for filing the appeal had long since expired, but he notes that she also told him that "the Court has the authority to accept an appeal that was filed late . . . ." *Id.* (quoting *Latouf Dec. 12, 2013, Letter* at 3).

9

Mr. Goguen says that he directly petitioned the First Circuit Court of Appeals to be allowed to proceed with a direct appeal. *Id.* Mr. Goguen attaches a February 13, 2014, letter from Attorney Latouf in which she tells him that on January 15, 2014, the First Circuit transmitted his January 7, 2014, motion to permit late filing to the District Court. *Def.'s Mot.*, Attach. 5, *Ex. E: Letter from Att'y Latouf to Robert Goguen*. The District Court docketed a motion for direct appeal on January 10, 2014, and dated January 7, 2014. *See Mot. for Notice of Appeal Consideration and Possible Appointment of Counsel* (ECF No. 133) (*Mot. for Notice of Appeal Consideration*).

### 5.   Significant Technical Errors

Regarding the motion for notice of appeal, Mr. Goguen claims that "a number of significant technical errors did in fact occur, and has deprived [him] of the constitutional right to direct appellate review." *Def.'s Mot.* at 4. Here, Mr. Goguen is referring to the Court's February 26, 2014, order that addressed his Motion for Notice of Appeal Consideration and Possible Appointment of Counsel. *Order on Mot. for Recons., Mot. for Possible Appointment of Counsel, and Mot. for Release of Seized Property* (ECF No. 140) *(Order on Mot. for Notice of Appeal Consideration)*. He claims that the Court misconstrued his request for appointment of counsel and dismissed it; however, he maintains that the Court did not dismiss his motion for direct appeal. *Def.'s Mot.* at 5. This led him, he contends, "to believe [his motion to be allowed to file a direct appeal] was still pending." *Id.*

Mr. Goguen further complains that the Court erred when it dismissed his request for a lawyer. *Id.* He contends that he was following Magistrate Judge

Kravchuk's "instructions" in filing the request for appointed counsel and claims that the Court's order rejecting the request ignored "that the request for counsel was contingent on whether the Court would allow an untimely appeal (a right lost to deficient performance) of the conviction judgment . . .." *Id.*

Finally, Mr. Goguen maintains that the Court "did not assess whether Attorney Haddow's conduct deprived [him] of the right to appeal the conviction judgment, or otherwise created equitable tolling factors as delineated in the 7 January 2014 petition." *Id.* He notes that if a direct appeal is still pending, a defendant may not file a habeas corpus petition. *Id.*

### 6. A 2017 Misconstrued Filing

Mr. Goguen skips ahead three and a half years and says that on November 28, 2017, he wrote the Court "regarding the criminal appeal." *Id.* (citing *Def.'s Mot.*, Attach. 6, *Ex. F: Letter of Robert Goguen* (*Goguen 2017 Letter*)). Mr. Goguen says that in his November 28, 2017, letter, he "explicitly cited the 7 January 2014, and its invocation that certain case law allowed equitable tolling to permit an untimely appeal due to IAC [presumably ineffective assistance of counsel], and then cited the exact same case law in the exact same order." *Id.* In the letter, he asserts, "I don't believe Judge Woodcock denied my request for appeal," and indicates that "[he] would still like to appeal that charge for the same reasons." *Id.* (quoting *Goguen 2017 Letter*). Mr. Goguen says that the Court "construed [his] request to appeal the conviction judgment for the same reasons raised in the 7 January 2014 petition as a motion to vacate under 2255, and the following pleading as a supplement . . .." *Id.*

11

Mr. Goguen characterizes as "rather perplexing" the treatment of his November 28, 2017, letter as a supplement to his 28 U.S.C. § 2255 petition. *Id.* at 6. To prove the point, he quotes a February 21, 2018, letter from Attorney Latouf in which she expressed the view that a review of the District Court docket indicated that the Court did not act on the January 7, 2014, motion and "[i]t is apparently still pending." *Id.* at 6 (alteration in original) (quoting *Def.'s Mot.*, Attach. 7, *Ex. G: Letter from Att'y Latouf to Robert Goguen* at 1 (*Latouf Feb. 21, 2018, Letter*)).

### 7.    The § 2255 Petition and the Direct Appeal

Mr. Goguen writes that "[g]iven that the principal was to be heard," he "inartfully attempted to seize the opportunity presented" and acknowledges that he has "been demonstrably struggling in the context of 2255 practice." *Id.*  He explains that "[i]n an effort to overcome statute of limitations," he "illuminated that [he] thought an appeal was pending; and that the document construed as a 2255 motion was a request explicitly invoking the embodiment of the 7 January 2014 petition," which, he says, "was timely filed." *Id.* (citing *Reply to Gov't's Resp. to 2255* (ECF No. 227)).  He figures that the current motion could "supplement and relate back." *Id.* Mr. Goguen asserts that "[a]gain the Court erroneously claimed the 7 January 2014 petition was somehow a 'Notice for Notice of Appeal' and not a habeas petition which the present 2255 motion's claims could relate back." *Id.* (citing *Order Affirming*).  He says that "notwithstanding the title 'this document was to file an appeal . . . not to serve as a 2255 filing.'" *Id.* (alteration in original) (quoting *Order Affirming* at 18). Mr. Goguen asserts that the Court "continues to disregard the fact that [he] was

following the Court's instructions through Magistrate Kravchuk, and Attorney Latouf, on how to 'file an untimely . . . appeal of [his] original conviction' not the revocation." *Id.* (some alterations in original) (quoting *Kravchuk Order*).

### 8. The February 7, 2019, Affirmance

Again referring to his January 7, 2014, filing, Mr. Goguen argues that the Court's "de novo finding is clearly erroneous . . .." *Id.* Instead of construing his inquiry "as a 2255 motion," he says that it is titled, "Re: Criminal Appeal," that he recited the "correspondence with courts 'regarding [his] interests in appeal[]ing this matter," that he recited "the same exact caselaw in the same exact order," and that he referenced the Court's order "concerning and citing the 7 January 2014 petition." *Id.* Furthermore, he quotes the language of his January 7, 2014, filing as saying that he did not "believe Judge Woodcock denied [his] request for appeal" and that he would "still like to appeal that charge for the same reasons." *Id.* (quoting *Goguen 2017 Letter*). He concedes that the "7 January 2014 petition significantly resembles a 2255 motion seeking relief due to counsel's constitutionally deficient performance depriving [Mr. Goguen] of an appeal [he] otherwise would have taken . . .." *Id.*

Mr. Goguen attacks the Court's February 7, 2019, Order Affirming Recommended Decision on 28 U.S.C. § 2255 Motion, asserting that the Court failed to perform a de novo review of the Magistrate Judge's recommended decision, that the Magistrate Judge erred in failing to consider his claims of actual innocence and in failing to consider his evidence against application of the statute of limitations even though the Government failed to dispute or contest his evidence, and that the

Court "insisted that the Government contends [his] argu[]ments merely rehash previously decided or dismissed issues or otherwise fatally flawed . . .." *Id.* at 7.

### 9.    The 1996 Sex Offense Conviction and Actual Innocence

In 1996, Mr. Goguen was convicted in the state of Connecticut of Sexual Assault in the Second Degree, a violation of Connecticut General Statute § 53a-71(a)(3). *See Order on Mem. in Opp'n to Gov't's Req. to Apply Penalty Ranges Under 18 U.S.C. § 3583(k)* at 3 (ECF No. 170). In his current motion, Mr. Goguen asserts that he was actually innocent of the 1996 crime, that he was "never charged with a specific offense," that he was "tricked into pleading guilty," and that during the plea colloquy the state prosecutor "illicitly amended the charging information to allege a particular offense." *Def.'s Mot.* at 7. Mr. Goguen says that he had asked his prior attorneys to obtain copies of the transcripts of his 1996 guilty plea and that his attorneys had assured him that the transcripts were unavailable, yet he obtained them and supplied them to the Court in June 2018. *Id.* (citing *Supportive Docs. and Evid. Suppl.* (ECF No. 236)). He complains that the Court has "never reviewed or even mentioned the transcripts" nor his claims that there were viable affirmative defenses to the Connecticut charge. *Id.*

Mr. Goguen says that he obtained the documents in the Connecticut case in April 2018 but that he had filed a complaint in the Connecticut Supreme Court in 2013. *Id.* at 7-8. He alleges that his former Connecticut defense lawyer "responded by reiterating the same misinformation he provided to coerce the plea . . .." *Id.* at 8. Mr. Goguen says that the Magistrate Judge "explicitly made plain that he would not

review the actual innocence claims of the 1996 conviction . . .." *Id.* (citing *Recommended Decision* at 2 n.1 ("This Court lacks jurisdiction over Petitioner's claims concerning the 1996 judgment")).

### 10. Robert Goguen's Massachusetts Actions

Mr. Goguen says that he continued to keep Massachusetts authorities aware of his whereabouts, his plans to move to Maine, and other information. *Id.* He maintains that his actions in Massachusetts go to whether he intentionally violated the registration requirements in Maine. *Id.*

### 11. Legal Arguments

Mr. Goguen asserts that the Court "committed grave errors, . . . exacerbating an already grave injustice by Attorney Haddow's constitutional deficient performance." *Id.* at 9. He claims that the Court "mistakenly deprived [him] of a direct appeal and postconviction relief of the conviction judgment." *Id.* He writes that when he filed to be allowed to file a late appeal of the 2012 judgment (or 2013 amended judgment), the Court "misunderstood [his] petition as implicating the revocation judgment." *Id.* He urges the Court to correct its mistakes by allowing nunc pro tunc a direct appeal to the Court of Appeals for the First Circuit of his 2012-13 criminal judgment. *Id.* To this end, he cites caselaw in which courts have granted late filings to be filed as of an earlier date. *Id.* Next, he says that the Court has the authority to provide relief under Federal Rule of Civil Procedure 60(b). *Id.* at 10. He also cites Federal Rule of Criminal Procedure 37 and Federal Rule of Civil Procedure 62.1 as allowing the Court to grant his motion. *Id.* He further contends that the

Court can set aside its order affirming the Magistrate Judge's recommended decision and grant release without conditions or process the initial filing because the Court never denied the right and the Government failed to respond or object. *Id.* at 9.

### B.    The Government's Opposition

On May 12, 2020, the Government filed its opposition to Mr. Goguen's motion for indicative ruling. *Gov't's Opp'n.* The Government notes that even though Mr. Goguen's motion contains a "lengthy and confusing history, it is clear from a review of the docket that he has never filed a timely notice of appeal to the 2012 judgment." *Id.* at 1. By contrast, the Government notes, on October 1, 2013, Mr. Goguen filed a timely notice of appeal to the September 24, 2013, revocation judgment. *Id.* at 1-2 (citing *Revocation Notice of Appeal*; *Revocation J.*). Citing Federal Rules of Appellate Procedure 4(b)(1)(A) and 4(b)(4) and 26(b)(1), the Government observes that Mr. Goguen had fourteen days within which to appeal his original criminal judgment and that the Court may extend the time by thirty days, but no more, unless the Government does not object to the late filing. *Id.* at 2. Here, the Government states, if Mr. Goguen were to file a late notice of appeal, "the Government would object." *Id.*

### C.    Robert Goguen's Reply

On May 18, 2020, Robert Goguen replied to the Government's opposition. *Def.'s Reply.* In his reply, Mr. Goguen not only requests relief, but as a remedy, he demands that he be "unconditionally released." *Id.* at 1. Mr. Goguen then asserts that the Government has not contested nor disputed

> any of the facts or attendant evidence supporting the claims that grave judicial errors (angled by the Government's conduct) ha[ve] deprived

> [him] of due process and just relief; that conviction judgment (2012 judgment) was unconstitutionally obtained; or that [he is] actually innocent of both the predicate sex offense and SORNA conviction for separate and independent reasons, which also demonstrate that the 2012 judgment is constitutionally infirm.

*Id.* Mr. Goguen dismisses the Government's opposition as entirely ignoring "the gravamen: [Mr. Goguen] tried to file a notice of appeal (NOA) of the 2012 judgment in September 2013 because Attorney Haddow failed to file a timely NOA." *Id.* at 2.

Mr. Goguen summarizes his earlier arguments point by point:

1)     In September 2013, he "filed an untimely NOA of the 2012 judgment; informed both the First Circuit and this Court of the NOA filing; filed a timely motion for postconviction relief of the 2012 judgment; and as a remedy for IAC," requested that this Court accept his NOA as timely, "which the Government failed to respond to, the Court failed to properly adjudicate, and remains pending;"

2)     Attorney Haddow "perfidiously and illicitly usurped [his] Sixth Amendment autonomy" when he withdrew Mr. Goguen's motion to withdraw guilty plea;

3)     Attorney Haddow failed to follow Mr. Goguen's instructions on appeal;

4)     the Court misconstrued Mr. Goguen's request to appeal the 2012-13 criminal judgment by mischaracterizing it as an appeal of the revocation judgment;

5)     the Court failed to perform a de novo review of the Magistrate Judge's recommended decision in the habeas corpus petition;

17

6)      the Government failed to prove that he had committed a qualifying offense under SORNA and the Court relied on improper documents;

7)      Mr. Goguen is actually innocent of the 1996 Connecticut conviction;

8)      Mr. Goguen is actually innocent of the 2012-13 SORNA conviction because he kept the commonwealth of Massachusetts informed;

9)      the Government failed to dispute his claims of actual innocence; and

10)     the Court was clearly erroneous in failing to grant his motion to vacate.

*See id.* at 2-4.  Mr. Goguen then reiterates some of his earlier arguments, adding citations to caselaw.  *Id.* at 4-6.

## III.   DISCUSSION

### A.      The Notice of Appeal: Time Limits and Equitable Relief[6]

Mr. Goguen presents a faulty premise to the "gravamen" of his most earnestly pressed argument, namely that because Attorney Haddow failed or refused to file a timely notice of appeal from the 2012-13 criminal judgment, the Court has the equitable authority to allow him to appeal now.  This argument is simply wrong.

Federal Rule of Appellate Procedure 4(b) states that "[i]n a criminal case, a defendant's notice of appeal must be filed in the district court within 14 days after the later of: (i) the entry of either the judgment or the order being appealed; or (ii) the filing of the government's notice of appeal."  FED. R. APP. P. 4(b)(1)(A).  "Upon a finding of excusable neglect or good cause, the district court may . . . extend the time

---

[6]      Here the Court is addressing issues one and four listed above.  *See supra* Section II.C.

to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." FED. R. APP. P. 4(b)(4).

In Mr. Goguen's case, the Court issued an amended criminal judgment on January 30, 2013. *Am. J.* The initial period for filing a notice of appeal expired on February 13, 2013. Mr. Goguen failed to file a notice of appeal within the fourteen-day period provided by the Rule and his right to appeal his conviction and sentence expired on that day. If he had filed a motion to extend the time for filing a notice of appeal (which he did not do), he would have been able to add thirty days to this period and the outer deadline for filing a notice of appeal would have lapsed on March 15, 2013.

These time limits are strictly enforced. Thus, for example, a court does not have the authority to extend the time for appeal beyond the forty-four days provided for in Rule 4(b). *See* FED. R. APP. P. 26(b)(1) ("For good cause, the court may extend the time prescribed by these rules . . . . But the court may not extend the time to file . . . a notice of appeal (except as authorized in Rule 4) or a petition for permission to appeal"); *United States v. Rapoport*, 159 F.3d 1, 2 (1st Cir. 1998) (stating that criminal defendants have "a maximum of forty[-four] days" to file a timely notice of appeal); *see also United States v. Stewart*, No. 1:19-cr-00009-JAW, 2020 U.S. Dist. LEXIS 46984, at *3-4 (D. Me. Mar. 18, 2020); *United States v. Ellis*, Crim. No. 97-44-B-S, Civ No. 01-22-B-S, 2001 U.S. Dist. LEXIS 16980, at *8-10 (D. Me. Oct. 22, 2001). It follows that "[c]ourts cannot extend the time period beyond the forty[-four]-day

time period prescribed by Rule 4(b)." *Rapoport*, 159 F.3d at 2-3 (quoting *United States v. Awalt*, 728 F.2d 704, 705 (5th Cir. 1984)).[7]

Before 2015, the First Circuit viewed these time limits as "mandatory and jurisdictional." *See Rapoport*, 159 F.3d at 3 (quoting *United States v. Robinson*, 361 U.S. 220, 226 & n.8 (1960), *abrogation recognized by United States v. Mitchell*, 518 F.3d 740, 743-44 (10th Cir. 2008)).

However, in *United States v. Reyes-Santiago*, 804 F.3d 453 (1st Cir. 2015), the First Circuit applied the distinction drawn by the United States Supreme Court between "a rule governing subject-matter jurisdiction and an inflexible claim-processing rule . . .." *Id.* at 457 (quoting *Eberhart v. United States*, 546 U.S. 12, 13 (2005) (per curiam)).  The *Reyes-Santiago* Court concluded that Rule 4(b) is a claim-processing rule and therefore the time limits in the Rule could be waived if the Government does not object in a timely manner.  *Id.* at 458; *see United States v. Galindo-Serrano*, 925 F.3d 40, 45 (1st Cir. 2019).  There is nothing on the docket that would allow the Court to conclude that Mr. Goguen filed a notice of appeal within the time limits imposed by Rule 4(b).  The question then turns to whether he filed a notice of appeal from the 2012-13 criminal judgment and whether the Government failed to object to the late appeal.

Another way of looking at the First Circuit caselaw on exceptions to a timely criminal appeal is that it precludes the primary argument Mr. Goguen is making

---

[7]      In 2009, Federal Rule of Appellate Procedure 4(b)(1)(A) and (b)(3)(A) was amended to expand the number of days within which an appeal must be taken from ten to fourteen.  FED. R. APP. P. 4 advisory committee's note to 2009 amendment.  The Court altered the language in these pre-2009 cases to reflect the current version of Rule 4(b).

here: namely, that the Court has the discretion to allow an untimely appeal to proceed on purely equitable grounds. Mr. Goguen cites no authority for the proposition and the Court is aware of none. The authority he cites involves habeas corpus petitions where the issues were whether an amended petition related back to the original petition and whether counsel's failure to file a timely notice of appeal meets the *Strickland* standard, *see Strickland v. Washington*, 466 U.S. 668 (1984), for ineffective assistance of counsel, respectively. *Def.'s Mot.* at 9 (citing *Hung Viet Vu v. Kirkland*, 363 F. App'x 439, 442 (9th Cir. 2010); *Lewis v. Johnson*, 359 F.3d 646, 649 (3d Cir. 2004)).[8] These are different questions than whether a court may excuse a late-filed notice of appeal on purely equitable grounds. The Court doubts that it has the equitable authority Mr. Goguen proposes and, in any event, would not exercise it in this case.[9]

### B.   Notice of Appeal and Government Objection

#### 1.   The October 1, 2013, Revocation Appeal

Even today, the docket reflects no notice of appeal on the criminal judgment that the Court issued on September 14, 2012, and amended by agreement on January 30, 2013. To the Government's point, the Court agrees with the Government that it cannot object to a notice of appeal that was never filed. To establish that he in fact

---

[8]   Mr. Goguen also cites *Jin Qing Wu v. Holder*, 705 F.3d 1, 3 (1st Cir. 2013), but *Jin Qing Wu* is not on point and to the extent it is, the case does not assist Mr. Goguen. *Jin Qing Wu* is an immigration case and the First Circuit denied the immigration appeal, affirming the Board of Immigration Appeals' determination that the petitioner alien had failed to file a timely application for labor certification. *Id.* at 1, 4.

[9]   Mr. Goguen cites Federal Rules of Civil Procedure 60(b) and 62.1 as authority for allowing a late criminal appeal, but the criminal rules, not the civil rules, control this issue. His citation to Federal Rule of Criminal Procedure 37 is also unavailing.

filed a notice of appeal of the 2012-13 criminal judgment, Mr. Goguen refers to his contention that he tried to file a notice of appeal of the original criminal judgment in September 2013. *Def.'s Reply* at 2 ("I tried to file a notice of appeal (NOA) of the 2012 judgment in September 2013 because Attorney Haddow failed to file a timely NOA"). But the only notice of appeal from Robert Goguen around September 2013 was a notice of appeal that the Clerk of Court docketed on October 1, 2013, and this notice of appeal was from the revocation judgment the Court issued on September 23, 2013. *See Revocation Notice of Appeal*; *Revocation J.*

The Court is unclear whether Mr. Goguen is saying that this October 1, 2013, notice of appeal was an attempt to appeal the original judgments. If he is, the Court rejects his argument. The October 1, 2013, notice of appeal (filed on September 28, 2013, pursuant to the prison mailbox rule) does not mention the original judgments and notes that he was filing the appeal because the Court told him he had fourteen days to do so. *Revocation Notice of Appeal* at 1. Given its timing, Mr. Goguen's reference to the fourteen-day period must have been to the September 23, 2013, revocation judgment for which his notice of appeal would have been within the fourteen-day limit, not the original judgments for which the notice would have been untimely. Furthermore, it is apparent from the face of the notice of appeal that he was appealing the revocation judgment, not the original judgment.[10] *Id.* Finally, on

---

[10] Mr. Goguen's October 1, 2013, notice of appeal reads:

I do not know the process to move forward for an appeal but remember Judge Woodcock stating I had to file notice in 14 days. Can you please use this as my notice to appeal. My logic is making me believe that the attorney, Jon Haddow, who represented me in my revocation hearing and sentencing will be the same for appeal. I humbly request the court to please excuse Jon Haddow from ever representing me again from this time forth. He continually refused to assert argu[]ments I presented, which proved his

22

October 9, 2014, the First Circuit resolved this appeal without any suggestion that it involved the original judgments.  *See First Circuit J.*  To credit Mr. Goguen's argument, the Court would have to conclude that Mr. Goguen went through the entire appeals process leading to the First Circuit's October 9, 2014, affirmance of the revocation judgment, all the while actually appealing the original criminal judgment of 2012-13, when there is no whisper in the First Circuit's October 9, 2014, order that he had raised issues with the original and amended criminal judgment.

## 2.    The October Appeal that Went Missing

In his motion, Mr. Goguen seems to imply that around September or October 2013, he sent a companion notice of appeal to this Court and that it went missing.  *Def.'s Mot.* at 2 ("Following revocation I filed two notices of appeal, one untimely regarding the conviction judgment, the other against the revocation judgment, only the latter was docketed and processed for appeal").  The Court can only go by what its docket reveals and it does not reveal any notice of appeal of the original 2012-13 judgments around September or October 2013.  What the October 1, 2013, notice of appeal of the revocation judgment demonstrates is that Mr. Goguen knew how to successfully file a notice of appeal, if he wished to do so.

---

avenue of choice was horrend[ous] and what I predicted to happen indeed did and I'm paying for it.  Can you then please appoint someone different who will work in defense, possibly Virginia Villa.  I have read some of her cases, or Hunter Tsvarros (Sp).
*Revocation Notice of Appeal* at 1.  There is no reference in this notice of appeal to the original and amended criminal judgments.

### 3. A November Letter to the Court of Appeals

Mr. Goguen also mentions that he sent a letter to the Court of Appeals for the First Circuit, indicating that he wished to appeal the original judgments. *Id.* This reference is to the letter from Mr. Goguen to Ms. Carter of the First Circuit that bears a First Circuit date stamp of November 29, 2013. *Id.*; *Letter Attachs.* at 2. In this letter, Mr. Goguen did say that he wished to appeal the "initial conviction separately to revocation." *Letter Attachs.* at 2.

### 4. The Magistrate Judge's January 2, 2014, Order

On December 19, 2013, the Clerk of Courts docketed another letter from Mr. Goguen, asking for copies of his letters and motions and saying he was "in the process of moving for an appeal [of the] original sentence and these are need[ed]." *Letter from Robert Goguen to Clerk of Courts* (ECF No. 126). Mr. Goguen added a postscript in pertinent part:

> By the way thank you, I just received your letter dated [December 10, 2013] and you have clarified my requests. I wish to appeal the original case as well as the revocation. Is there paperwork I must fill out to proceed with this request?

*Id.* Mr. Goguen's inquiry precipitated a January 2, 2014, order from the Magistrate Judge, which read in pertinent part,

> [t]here are no forms to use regarding untimely appeals and if [Mr.] Goguen wishes to file an untimely pro se appeal of his original conviction, he must do so with his own submission.

*Kravchuk Order.*

In his motion, Mr. Goguen somehow construes the Magistrate Judge's response to his inquiry as constituting "instructions" and asserts that, in filing the January 7,

24

2014, motion, he was acting in accordance with the Magistrate Judge's order. *Def.'s Mot.* at 6 ("The Court continues to disregard the fact that I was following the Court's instructions through Magistrate Kravchuk, and Attorney Latouf, on how to 'file an untimely . . . appeal of [my] original conviction' not the revocation" (alterations in original) (quoting *Kravchuk Order*)).

To be clear, the Magistrate Judge was not instructing Mr. Goguen to file an untimely appeal. She was merely responding to his inquiry about whether there was a form for doing so, clarifying that there is no such form, and informing him that if he wished to file an untimely appeal, he would have to do so with his own submission. To the extent Mr. Goguen argues that he was following the Magistrate Judge's order in filing an untimely appeal, the Court rejects this assertion.

### 5.    The January 7, 2014, Goguen Motion (ECF No. 133)

On January 10, 2014, the Court docketed under ECF number 133 a pro se filing from Mr. Goguen dated January 7, 2014, and entitled "Motion for Notice of Appeal Consideration and Possible Appointment of Counsel":

> I, Robert Goguen, am the defendant in the above matter and hereby request this court to accept my notice of appeal as timely and to appoint counsel. I am filing this motion pro se as [the] court has explained that my notice is untimely, that there are no forms for filing untimely, and I need to make my own submission. I suffer from several mental health issues as well as learning disabilities which make writing legal papers difficult, my apologies for not being concise or improper word usage.

> Facts

> Concerning appeal and timel[i]ness, prior to sentencing I wrote my court appointed attorney, Jon Haddow, regarding several issues I wanted to preserve for appeal. Each of these was deemed frivolous by [Attorney] Haddow; however, he was aware of other concerns and my intentions on

appeal, about the actual sentence, case, and conditions of supervised release.  Immediately after sentencing I asked [Attorney] Haddow to retain my legal documents and to contact me A.S.A.P. for my appeal issues.  Following this date, I was transferred to Strafford County Jail in New Hampshire and for several weeks I tried to contact [Attorney] Haddow by phone prepaid from my account.  Classification Officer Mr. Boggs (sp?) informed that the[re] was some issues with BOP and my sentencing and on two separate occasions allowed me to directly call [Attorney] Haddow with no result.   I left voicemails requesting [Attorney] Haddow to contact me either through staff or call the facility. S.C.J. allowed attorney phone calls directly to an inmate[']s living areas. In both these messages I reiterated my intentions of challenging the case.   [Attorney] Haddow refused to communicate so I filed my own motion to at least amend sentence.

On or about September 3, 2013 I sent a notice of appeal to challenge the failure to register, and on September 28 2013 against the revocation. After receiving a letter from appointed appeal attorney Ms. Latouf on October 30 2013 I was informed that the former appeal was not processed.  I had been transferred several times following sentencing and received this information late.  On November 10, 2013 I again filed a notice with my court and on Nov. 20, 2013 with the appeals court.

It is my understanding that I had one year from September 14 2012 to file an appeal, if this or any other information supports such, can you please consider accepting my notice of appeal as timely.  Both appeals concern multiple claims of ineffective assistance of counsel by attorney Jon Haddow, including a claim that he deliberately withdrew my not guilty plea without my knowledge or consent, and in direct conflict of my interests [indecipherable] case law supports time tolling, Figueroa v. US (1st Cir. 2012), US v. Phan, (5th Cir. 7-18-13), Roe v. Flores-Ortega, S. Ct., and Holland v. Florida, S. Ct. (2010).

In your consideration of timing, if you allow the appeal can you please appoint counsel, my current appeals attorney may accept.  I may be able to cite case law but lack the proper skill at executing arguments and this case means a lot to me to end up screwing up because of[] a technical error.  Separately I am being released as homeless and lack resources. Thank you in advance for any action taken.

*Mot. for Notice of Appeal Consideration* at 1-2.

### 6.      The February 26, 2014, Order

In its February 26, 2014, order, the Court unequivocally dismissed Mr. Goguen's motion for untimely filing of an appeal:

> The Court DISMISSES without prejudice Robert Goguen's . . . Motion for Notice of Appeal Consideration and Possible Appointment of Counsel (ECF No. 133).

*Order on Mot. for Notice of Appeal Consideration* at 5.[11]

Other than what is in the order, the Court cannot recall what it was thinking when it dismissed the motion for notice of appeal consideration on February 26, 2014. In re-reviewing the order, it may have been that the Court thought Mr. Goguen was asking for permission to appeal the revocation judgment and dismissed the motion because his appeal of the revocation judgment was pending. This would be consistent with the portion of the order that says that Mr. Goguen does not need a second attorney because he already has one.

Mr. Goguen's January 7, 2014, motion is extremely dense and his assertion that he wants to be allowed to file an untimely appeal of the original conviction and sentence is buried within the motion. The motion itself is opaque as to what appeal it concerns.[12]   The Court would have reviewed the motion with the knowledge that Mr. Goguen had pleaded guilty to the failure to register charge in 2011, had been

---

[11]     Attorney Latouf stated in a letter to Mr. Goguen that it appeared the Court never acted on the motion for notice of appeal considerations and it was still pending. *See Latouf Feb. 21, 2018, Letter* at 2. With due respect to Attorney Latouf, on February 26, 2014, the Court clearly dismissed the motion for notice of appeal consideration and possible appointment of counsel and it has not been pending since then.

[12]     The motion talks about his disagreements with Attorney Haddow.  But Attorney Haddow represented Mr. Goguen at both the original conviction and sentence and at the revocation conviction and sentence, so the fact he and Attorney Haddow disagreed does not clarify whether Mr. Goguen was addressing the original and amended criminal judgment or the revocation judgment.

sentenced in 2012 with an amended judgment in 2013, had served his period of incarceration, and was serving a period of supervised release for that conviction. The Court would also have known that Mr. Goguen had not appealed the original conviction and sentence and therefore the judgment was final. Moreover, the Court would have been aware that the most recent event in Mr. Goguen's case was his revocation conviction and sentence, which was already on appeal to the First Circuit.

In fact, Mr. Goguen himself has argued that his January 7, 2014, filing was not an attempted appeal, but a § 2255 motion. Mr. Goguen entitled his January 7, 2014, filing as "Notice of Appeal Consideration and Possible Appointment of Counsel." He is now asserting that this filing was a motion for late filing of notice of appeal. However, in his objection to the recommended decision in his § 2255 petition, Mr. Goguen argued that he mislabeled docket number 133 as an appeal when it was in fact a supplement to an earlier-filed request for habeas relief. *Pl.'s Obj. to Magistrates Recommendation* at 5 (ECF No. 261) ("It is undeniable that I mistitled my motion, ECF 133, and was mischaracterized by the courts, ECF 252, @ ¶s 52-70. All the documents I cited, and the first motion that this court recognized as a motion for relief recently, are nearly identical in nature, context, and substance"). In his Second Further Amendment to the § 2255 petition, Mr. Goguen wrote:

> Nonetheless I drafted my own "untimely appeal" request as instructed, and sent it to the Appellate Court. Docket 13-2230, document 00116634925, otherwise known as ECF 133. The First Circu[i]t picked up on that this was actually a 2255 motion for relief and returned it to my sentencing court to rule on. Trenkler v. US, 536 F[.]3d 85 (1st Cir[.] 2008), cert. denied, 129 S. Ct. 1313 (2009) (Mislabel is immaterial, the substance of the motion controls what relief shall be treated).

*Second Further Am. to 2255*, Attach. 1 at 18 (ECF No. 252).  Now that his habeas corpus petition has been denied, in contradiction to his earlier contention, Mr. Goguen argues that his January 7, 2014, filing was an attempted late appeal, not a motion for habeas relief.  *See Def.'s Mot.* at 1.

In addition to these developments, most significantly, based on First Circuit law as it existed on February 26, 2014, when the Court dismissed his motion for appeal considerations, the Court would have known that Mr. Goguen could not file a late appeal.  The First Circuit did not decide *Reyes-Santiago* until October 23, 2015, 804 F.3d 453, and as of February 26, 2014, the First Circuit viewed the time limits in Rule 4(b) as "mandatory and jurisdictional."  *Rapoport*, 159 F.3d at 3 (quoting *Robinson*, 361 U.S. at 226 & n.8).  If the Court had understood Mr. Goguen as seeking to appeal a 2013 amended judgment in 2014, it would have summarily denied the motion based on First Circuit law at the time.  In reviewing Mr. Goguen's motion, the Court would not have been predisposed to read the motion as requesting relief that, as a matter of law, it could not order.

Finally, as discussed below, even if Mr. Goguen had been allowed to directly appeal the ineffective assistance of counsel issues he proposed raising in his January 7, 2014, motion, his appeal would have been rejected as non-meritorious because, except in unusual circumstances not applicable here, a defendant may not raise ineffective assistance of counsel claims on direct appeal.

### 7.   Ineffective Assistance of Counsel Claims and Direct Appeal[13]

As Mr. Goguen has now made plain, he wished to obtain permission to file a direct appeal to the First Circuit to raise "multiple claims of ineffective assistance of counsel by attorney Jon Haddow." *Mot. for Notice of Appeal Consideration* at 1. Except in unusual circumstances, not present here, a defendant may not raise claims of ineffective assistance of counsel on direct appeal. *See United States v. Brown*, 945 F.3d 597, 605 (1st Cir. 2019); *United States v. Ofray-Campos*, 534 F.3d 1, 34 (1st Cir. 2008). In *Ofray-Campos*, the First Circuit explained:

> "We have held with a regularity bordering on the monotonous that fact-specific claims of ineffective assistance cannot make their debut on direct review of criminal convictions, but, rather, must originally be presented to, and acted upon by, the trial court." *United States v. Mala*, 7 F.3d 1058, 1063 (1st Cir. 1993). This is because an appellate court usually is ill-equipped to handle the fact-specific inquiry that such claims often require. *See id.* "In addition, the insights of the trier, who has seen and heard the witnesses at first hand and watched the dynamics of the trial unfold, are often of great assistance." *United States v. Moran*, 393 F.3d 1, 10 (1st Cir. 2004). In the exceptional case, however, where the record is sufficiently developed, and critical facts are not in dispute, such claims may be reviewed. *United States v. Torres-Rosario*, 447 F.3d 61, 64 (1st Cir. 2006).

534 F.3d at 34.

There was no indication that the record below "is sufficiently developed, and critical facts are not in dispute . . .." *Id.* For example, it is not a settled matter of record that Mr. Goguen's characterization of Attorney Haddow's representation as "perfidious" would be corroborated by Attorney Haddow's notes and recollection. As such, applying First Circuit authority, if this Court had reached the merits of Mr.

---

[13]     Here the Court is addressing issues one through four listed above. *See supra* Section II.C.

Goguen's demand to be allowed to file a late appeal, it would not have granted it. In these circumstances, as the First Circuit has written, the preferred course of action is to dismiss the attempted appeal without prejudice, exactly what the Court did. *See id.* ("Instead, we dismiss the claim without prejudice to its reassertion, should the Appellant so choose, in a proceeding under 28 U.S.C. § 2255").

This dismissal without prejudice did not mean that Mr. Goguen was without recourse. He had the right to pursue a habeas corpus petition under 28 U.S.C. § 2255, and in fact, he did so on November 28, 2017. *See Mot. to Vacate.* But he was unsuccessful.

In any event, on February 26, 2014, the Court consciously dismissed the motion for direct appeal without prejudice, effectively informing Mr. Goguen that he could, if he chose to do so, reinitiate the motion; he could have asked the Court to reconsider its dismissal order or he could have attempted to appeal the dismissal order. Mr. Goguen did none of these things. Instead, he waited six years to bring to the Court's attention that he believed it misunderstood his motion in 2014.

### 8.    New Request for Permission to Appeal

To the extent Mr. Goguen's motion represents a newly-filed request to be allowed to file an appeal of the 2012-13 judgment, he has not yet filed a formal notice of appeal but is asking for permission to do so. The Government has indicated that it objects to his pending motion and will object to any new notice of appeal. Accordingly, under *Reyes-Santiago*, 804 F.3d at 458, the Government has not waived objection to the late notice of appeal and his attempt to appeal now is barred.

31

### 9.    Ineffective Assistance of Counsel Claims[14]

Despite Mr. Goguen's provocative description of Attorney Haddow's representation, he may not now raise an ineffective assistance of counsel claim in this motion.  As noted earlier, on November 28, 2017, Mr. Goguen raised similar allegations against Attorney Haddow in his § 2255 petition.  *Mot. to Vacate* at 7-8.  On September 28, 2018, the Magistrate Judge issued a recommended decision in which he recommended that the Court deny the habeas petition because it had been filed beyond the one-year statute of limitations and Mr. Goguen was not entitled to equitable tolling.  *Recommended Decision* at 9-10.  On February 7, 2019, the Court affirmed the recommended decision over Mr. Goguen's objection.  *Order Affirming*.  On February 24, 2020, the Court of Appeals for the First Circuit affirmed this Court's denial of Mr. Goguen's motion for certificate of appealability and terminated his appeal.  *2020 First Circuit J*.  On June 15, 2020, the First Circuit issued its mandate.  *Mandate* (ECF No. 348).  The judgment on his § 2255 petition is final and he may not use this motion as a means under another name to file yet another § 2255 petition.[15]

### 10.    De Novo Review of Magistrate Judge Decision[16]

In his motion, Mr. Goguen charges without explanation that this Court failed to perform a de novo review of the Magistrate Judge's recommended decision on his habeas corpus petition.  *Def.'s Mot.* at 7.  The Court rejects Mr. Goguen's accusation.  First, the Court notes that it did not summarily affirm the Magistrate Judge's

---

[14]    Here the Court is addressing issues two and three listed above.  *See supra* Section II.C..

[15]    A second § 2255 petition would likely be barred as untimely and as a second or successive habeas petition.  28 U.S.C. § 2255(f)(1)-(4), (h)(1)-(2).

[16]    Here the Court is addressing issue five listed above.  *See supra* at Section II.C..

recommended decision.  Instead, on February 7, 2019, the Court issued a twenty-seven-page opinion in which it extensively analyzed Mr. Goguen's claims and explained why his objections were non-meritorious.  *Order Affirming* at 1-27.

Furthermore, if the Court erred in its analysis of Mr. Goguen's objection to the recommended decision, Mr. Goguen could and should have brought those errors to the attention of the Court of Appeals for the First Circuit.  On February 24, 2020, however, the First Circuit affirmed this Court's ruling on the habeas corpus petition and the judgment is now final.  *2020 First Circuit J.* at 1 ("Having reviewed the application, along with relevant portions of the record, we conclude that the district court's resolution of the § 2255 motion was neither debatable nor wrong").  To the extent Mr. Goguen brought these asserted errors to the attention of the First Circuit on appeal, the First Circuit rejected his claims of error.  To the extent, Mr. Goguen now attempts to raise new legal issues to attack the resolution of the § 2255 petition, he has waived the right to do so by failing to raise them on appeal, and Mr. Goguen may not collaterally attack this final judgment in this pending motion.

## 11.    Claims of Actual Innocence[17]

Mr. Goguen reiterates that he is actually innocent of all his convictions, including the ones to which he pleaded guilty.  The Court has addressed his claims in numerous orders and addresses these claims once again in its order on Mr. Goguen's motion to withdraw guilty plea.  *See Order on Second Mot. to Withdraw Plea and Admission* at 32-39.  For the reasons set forth in those prior orders and the order

---

[17]    Here the Court is addressing issues six through ten listed above.  *See supra* at Section II.C..

on the motion to withdraw guilty pleas, the Court does not view Mr. Goguen's actual innocence claims as meritorious.

## IV.    CONCLUSION

The Court DENIES Robert Goguen's Request for the Article III Judge to Provide by Any Equitable Means Necessary by Indicative Ruling Relief in an Expedited Manner (ECF No. 331).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of July, 2020